## WAGGENER ET. AL. VS. McLAUGHLIN ET AL.

1   TAX TITLE : *Purchase by tenant; claim for penalties and improvements.*

Where land becomes forfeited to the State for non-payment of taxes by neglect of the owner, his tenant may terminate the tenancy by delivery of the possession, or protect himself from eviction by a future purchaser from the State, by advancing the taxes and holding a lien for re-imbursement, or if the lands are sold for taxes at public sale, during the tenancy, without his fault, he may purchase and set up his title thus acquired, against that of his landlord. But he cannot use his possession which he holds as a tenant, as a basis to acquire title as an *actual settler*, and thereupon found a claim hostile to his landlord. Equity will regard him and all persons holding under him, except purchasers without notice, as trustees for the benefit of the landlord, and will not permit them to speculate on such a purchase, but will allow them only the actual amount paid *in money* to the auditor or the cost of scrips used, in the purchase. No per centum beyond the legal rate of six per cent. should be allowed him, nor any penalties or costs upon subsequent taxes paid by him. Beneficial improvements made by such purchaser may be allowed.

2.   PRACTICE IN EQUITY: *Limitation.*

Where such purchaser is the tenant of a receiver in court, it is proper to bring him in by rule, to compel him to surrender possession to the receiver, and the statute of limitations as to actions does not apply.

APPEAL from *Crittenden* Circuit Court in Chancery.

Hon. L. L. MACK, Circuit Judge.

*Randolph,* for appellant.

*Adams, contra.*

EAKIN, J. :

This is a branch and continuation of the case of *Waggener et al.* v. *Lyles et al.*, in which an opinion was delivered here

on the 5th December, 1874 ; and an order made remanding it, with instructions.

Pending the former appeal, a portion of the property in controversy, was on the 20th of February, 1871, forfeited to the State for non-payment of the taxes of 1869, to-wit : *Part of Spanish Grant No. 2290*, and also the *southeast and the southwest quarter of section 27, in township 7 north, of range 9 east.*

Meanwhile, the Receiver, Berry, seems to have continued, nominally, to be recognized as such, although he did nothing more than to transfer the custody and control of the property to George W. Cheek as a tenant. He collected no rents from Cheek ; but the rents, whatever they were, were disposed of by agreement amongst the parties interested. All matters in litigation seem to have been compromised amongst the original litigants, before the decision of the case here ; and perhaps for that reason no action has since been taken, in the court below, in accordance with the mandate of this court on said 5th, December 1874.

George W. Cheek, holding nominally under the said receiver, had, pending the appeal, sub let to John McLaughlin the Mound City property, described as "part of Spanish Grant, No. 2290—108.00," and to D. C. Robinson the two quarter sections above described in section 27 ; who were holding, as tenants of Cheek, when the time for redemption expired in 1873.

On the 14th of April, 1873, each applied to the Auditor of State to purchase the respective portions of land, held by them under sec. 172 and 173, chap. 148, of Gould's Digest, by which citizens or heads of families and *actual settlers* upon lands forfeited to the State for taxes, were authorized to purchase the same of the Auditor, upon payment of the amount of taxes due thereon, with penalty and costs. They made the neces-

sary affidavits to this end, and received deeds from the Auditor, McLaughlin paying for his portion the sum of $2892.90, and Robinson, the sum of $123.68; which sums included the taxes of 1869-70-71 and 72.

About the same time Robinson conveyed all his interest to McLaughlin.

There have been intermediate conveyances since then, of shares of these lands from McLaughlin to others, and reconveyances back to him and to his wife, which it is unnecessary to notice, as all the interests, under these purchasers from the State, became united again in McLaughlin's estate after his death. It is in proof that, before purchasing from the State, McLaughlin advised Cheek, his landlord, that the time for redemption was about to run out, and that others were looking after the land with a view to its purchase; to which Cheek responded that McLaughlin did not know what he was talking about.

After his purchase from the auditor, McLaughlin repudiated the tenancy and claimed the property as his own, refusing to pay rents. A contest then began for possession, through orders of the court below, regarding the property; based upon the idea that it was still in the custody of the law, from having been ordered into the hands of Berry, as receiver. On the 9th of December, 1873, Robert B. Burton, was by the Crittenden Circuit Court appointed receiver to fill the vacancy occasioned by the death of Berry, and in January following, by agreement of attorneys, the appointment was confirmed here, where the appeal was still pending. It was ordered that said Burton be recognized as such receiver, as well in this court as in the court below.

Thereupon the parties to the original suit, making common cause against McLaughlin, began proceedings in the court below to remove him from possession, and to compel restitu-

tion to the Receiver Burton.     Application was made by
petition to the Hon. John W. Fox, Circuit Judge, for the pur-
pose, who for some reason did not act.     On the 13th of May,
1874, the petition was granted by the Hon. John E. Bennett,.
then an associate justice of this court, who afterwards, by
writ of assistance, put the property in the hands of
Burton.

McLaughlin and his co-tenants, afterwards applied to his.
honor, Judge Hutton of the Circuit Court, who sitting in
Chambers on the 29th of July, 1874, ruled that the injunction
had been improvidently awarded by a judge having no jurisdic-
tion, dissolved it, and ordered· Burton to restore possession to·
McLaughlin and his co-tenants.

Afterwards it seems from an order in the transcript without
date or file mark, that the Circuit Court ordered Burton to
bring an action of forcible entry and detainer for the lands,
against James McLaughlin, as guardian, and Mary McLaugh-
lin, as executrix; John McLaughlin, having died in possession
leaving a son, and devisee of these lands, Francis P. A.
McLaughlin.     When the action was brought does not appear
in the transcript, (which throughout is wonderfully careless,
and regardless of the rules of this court) but we might infer
from a paper, bound up with the transcript, that it was pend-
ing on the 25th of October 1876; and dismissed on the 3d of
November of the same year; at the cost of the plaintiff.

Resort was again had to the chancery proceedings; and
after several attempts, all the parties interested were brought
in on a rule to show cause why the lands should not be
surrendered to the receiver; and those holding it punished for
contempt.

Respondents to the petition, in showing cause, set up the
purchases from the State; and amount of taxes paid, with pen-
penalties     and     costs ;     and     also     claims     for     valuable

improvements ; for all which no one had paid or offered to pay them.

They also relied upon two years' possession as a bar under the statute of limitations.

Upon the hearing, the court appointed a special master to report " the amount paid the State as taxes for said lands by John McLaughlin, and by D. A. Robinson, with *one-hundred per centum* per annum thereon, and the amount of taxes since paid thereon by John McLaughlin and his successors, with twenty-five centum per annum thereon from the date of payment, and the value of all improvements thereon," made since the payment.

The receiver reported on the first of November, 1876, as follows :

| | | |
|---|---:|---:|
| Amount paid by McLaughlin to Auditor for taxes, | $2,892 | 50 |
| Amount paid by Robinson to Auditor for taxes... | 133 | 06 |
| 100 per cent. on both sums.................... | 3,025 | 36 |
| Taxes for 1874.............................. | 234 | 09 |
| Penalty for 1874 and 1875..................... | 117 | 04 |
| Taxes for 1875.............................. | 133 | 86 |
| Penalty...................................... | 33 | 46 |
| | $6,570 | 37 |

The improvements of a permanent character were reported, with valuations swelling the amount to...................................... $7,148 37

To this report, the parties moving for the rule, consisting of those interested in the fund in court as represented by the receiver excepted ; objecting only to such parts as allowed *any interest or penalty on the amount of taxes paid*, and as to *all or any sum for improvements*.

The court overruled the exceptions, and ordered that upon payment to the said Mary A. McLaughlin, and Francis P. A. McLaughlin, of the said sum of $7,149.37, the receivership of

said Burton, should be extended over the property in contro-
versy, and the deed from the auditor cancelled.

From this order the original parties to this suit excepted and
appealed.

The report of the master is in accordance with directions.
The question is upon the correctness of the Chancellor's views
in making the reference.   He evidently supposed that the act
of January 10th, 1857, (See Gantt's Digest, Sec. 2267),
applied to this form of proceeding; and to the circumstances
attending the supposed acquisition of the titles from the State.
If so the directions were proper.

The Receiver, Berry, appointed in the original cause, was
not discharged by the former appeal, nor was the control of
the property taken from him during its pendency.   He re-
mained reeeiver until his death.   The proper course would
have been then, to have applied here for the appointment of a
successor.   That was not done, but the appointment of Burton
made below, was ratified here in such a manner as to settle it,
*in this case*, beyond further question, that all the property in
the original suit, must be considered to have remained in the
custody and under the control of its Receiver.   That little use
was made of him until the contest for possession arose, does
not affect his status.

John McLaughlin and Robinson were tenants of property
thus in custody of the court, paying rent to one of the parties
to the suit, by agreement and consent of the receiver, and of
all others interested.   Formally they were sub-lessees of Geo.
W. Cheek, who was lessee of the receiver; but substantially,
and for all practical purposes, they had possession under the
court, of property in its custody for the benefit of litigants.

When the property became forfeited to the State for non-
payment of taxes, by neglect of the receiver, they might have
terminated the tenancy by re-delivery of the possession, or

protected themselves from eviction by a future purchaser from the State, by advancing the taxes and holding a lien for reimbursement, or, as has been held in this court in *Ferguson* v. *Etter*, 21 Ark., 160, if the lands had been sold for taxes at public sale during their tenancy, without their fault, they might have bid, and set up title thus acquired against that of the Receiver. The fact that the property was in the custody of the court did not, of itself, prevent the collection of revenue and could not retard it.

But they availed themselves of a possession which they held as tenants, as a basis to acquire title as actual settlers, which no one else under the circumstances could have acquired against them. They had no right to make use of a possession thus acquired, to found upon it a claim hostile to the landlord. If they had intended that, they should have restored possession, that the landlord might be free to contest the validity of the forfeiture to the State, and have the advantage of possession.

When they purchased from the State. under these circumstances, they became constructive trustees for the benefit of the owners of the property in court, and subject to the control of the court with regard to said property, as fully as when they held under it as tenants. This trust remained, throughout, attached to John McLaughlin, and falls upon his widow, heirs, devisees, or any holding under him in privity of blood, or otherwise ; save purchasers for valuable consideration, without notice. The proceedings, by rule to show canse, were apt for the purposes intended, and the statutes of limitations as to actions do not apply.

The validity of the forfeiture, and the sale from the Auditor is not important, and should not therefore be cancelled. The deed may stand good to divest the property from the State, if she had any by the forfeiture ; and to vest it in the devisee of McLaughlin, and his widow, who claims legal title to a portion ; all to hold as trustees for the purposes of this suit.

The Chancellor erred in directing an allowance for penalties on subsequent taxes, and 100 per cent. on the amount paid the Auditor.

Considering McLaughlin and Robinson throughout as trustees, they cannot derive any benefit to themselves from their purchases, or in any manner speculate upon the property. They should be allowed the actual amount paid, *in money*, to the Auditor when the lands were bought, or if scrips were used, the cost of the scrips in money, or if that cannot be ascertained, the average costs of such scrips at the time.

No per centum beyond the legal rate of 6 per cent. should be allowed upon the amount paid the Auditor, nor upon any subsequent taxes paid by McLaughlin, or for him. Nor should he be allowed penalties or costs, allowed to accrue upon subsequently paid taxes, although actually advanced. He had repudiated his tenancy ; had the pernancy of the rents and profits ; and should have kept the taxes down out of them. That duty results, moreover, from the constructive trust.

Improvements, under the circumstances, are not allowable of right. Such as are reported seem to have been prudently made, and beneficial to the property. If the Chancellor should think it equitable under the circumstances to allow them to the extent of the rents and profits, it will not be held erroneous.

Reverse the order from which the appeal is taken, as well as the order directing the account ; and let the cause be remanded to proceed under its original style, and as one cause with that of *Waggener et al.* v. *Lyles et al.*, decided here upon appeal in December, 1874, save in so far as changes of parties may have become necessary ; and with directions that an account be retaken, charging said Jas. K. McLaughlin as guardian, and Mary McLaughlin as executrix, with the full value of the rents and profits of said Mound City property, and said two quarter sections in section twenty-seven, from the time said John

McLaughlin ceased to pay rent, with interest at the rate of 6 per cent. from the time they were due ; with such allowances out of said rents as the Chancellor below may see fit to direct for improvements ; and crediting them with the money or value of other funds paid to the Auditor upon the purchase of the lands, as may be shown by proof, and with all taxes subsequently paid without penalties or costs, and at the real value in money, with interest on all sums paid at the rate of 6 per cent. from the time of payment ; and upon a balance being struck, and upon payment by the Receiver of said amount to said McLaughlins, so in possession, or their agents, they be ordered to deliver possession of all said property to the Receiver appointed in this cause, or to be appointed in his place. And with further instructions to the court below, to proceed in said cause in all respects in accordance with law ; and not inconsistent with the opinion heretofore rendered therein, or this opinion.