Smith v. Specht.

---

## JOHN B. SMITH and LUCY S. BILLINGSLEY

*v.*

## PHILIP SPECHT and ANDREW RUFFLE.

[Submitted February 25th, 1899.  Decided March 3d, 1899.  Filed September 26th, 1899.]

1. *Gen. Stat. p. 3359 ¶ 368*, giving a tax lien priority over other encumbrances, does not apply to prior liens for taxes held by the state.

2. Under *Gen. Stat. p. 3357 ¶ 354*, authorizing the township to become a purchaser at a tax sale, and to thereafter sell the premises for the price paid and subsequent taxes thereon, and paragraph 365, requiring a redemptioner to pay the subsequent taxes in addition to the price for which the lands were sold, a sale of lands by a town for delinquent taxes assessed against them subsequent to a sale thereof to the town for prior delinquent taxes, divests the title of the town under the earlier sale.

Smith v. Specht.

3. Under *Gen. Stat. p. 3287* ¶ *33*, making the tenant personally liable for taxes on the premises, which he may deduct from the rent after paying the same, a person in possession of lands, enjoying the rents and profits thereof, either as tenant or without attorning to anyone, cannot acquire a title to the premises, as against the owner, by purchasing the outstanding tax title.

4. Since *Gen. Stat. p. 3354* ¶ *338*, requiring the redemptioner from a tax sale to pay the price, with costs, expenses and twelve per cent. interest, does not expressly give the landowner the right to come into equity to redeem, equity will compel him, as a condition of permitting him to redeem, to pay all taxes paid by the purchaser, on the principle that he who seeks equity must do equity.

5. Equity will compel the holder of a tax title, who has been in possession of the premises and received the rents and profits thereof, to account for the same as a condition precedent to his right to compel the owner, in redeeming, to reimburse him for taxes paid while he was in possession.

Heard on bill, answer, replication and proofs.

*Mr. Charles W. Parker*, for the complainants.

*Mr. James P. Northorp* and *Mr. Davis* (of New York), for the defendants.

PITNEY, V. C.

The object of the bill is to redeem certain lands in the township of Milburn, Union county, from the effect of a sale thereof by the collector of taxes of that township to the defendant Specht for the term of thirty years.

The taxes for which the lands were sold were assessed in the year 1893, and the sale took place on the 8th of July, 1895, and on the 10th of July, 1895, less than two years after the assessment, a certificate of sale was made and issued to Specht, the purchaser. Within two years of that date, to wit, on the 7th of April, 1897, the complainants tendered the amount bid at the sale, with costs, expenses and twelve per cent. interest, to Specht, and demanded a deed of the premises—all in strict compliance with the ninth section of the act of March 14th, 1879. *P. L. of 1879 p. 340; Gen. Stat. p. 3354* ¶ *338*.

Specht declined to accept the money and give the deed required, unless he was paid certain other moneys which he claimed he had

paid for taxes levied for other years upon the premises. This the complainants declined to do, and on the 13th of April, 1897, filed their bill. Service was made upon the defendant Ruffle, who was the tenant in possession of the premises. He has not appeared or made answer, and a decree *pro confesso* has been taken against him. The defendant Specht, who was not served, appeared by a solicitor, but did not answer until January 25th, 1898.

His answer sets up that since the 8th of July, 1895, the day of the sale to him, he has paid for taxes in arrears on the premises as follows: the taxes for the years 1890, 1892, 1894, 1895 and 1896. This, it will be observed, covers all the taxes from and including 1890 to 1896 except those of 1891 and 1893, the latter being those for which the property was sold in July, 1895, leaving the taxes of 1891 yet to be accounted for.

The answer says that Ruffle, the other defendant, is in possession as the tenant of Specht, and that he made the payment of taxes before mentioned as the agent of Specht, and that the moneys laid out in paying the taxes were moneys of Specht.

The answer further sets up, as to the taxes of 1891, that on the 23d of March, 1893 (two years and more before the sale of 1895), the collector of taxes of the township of Milburn sold the premises for the non-payment of the taxes of the year 1891, and that the same were struck off to and purchased by the municipality, "The Inhabitants of the Township of Milburn," for the term of thirty years, and that a certificate was delivered to the township, which certificate on the 6th of March, 1896, for a valuable consideration, was assigned and transferred by the township to the defendant Ruffle acting as the agent of the defendant Specht, and the consideration therefor was paid by the defendant Specht to the township through Ruffle as his agent; and further, that in accordance with the assignment of the certificate of sale last mentioned, on the 18th of January, 1898, seven days before the answer was filed, the inhabitants of the township, through its committee, conveyed the lands to Ruffle for the unexpired term of thirty years, and delivered to Ruffle a deed of conveyance for the same, a copy of which is set out by schedule.

The answer alleges that neither the complainants nor any other person ever made any tender for the unpaid taxes of the year 1891, nor any part thereof, to the township, or to the defendant, or to Ruffle, and claims that thereby the title to the premises has become absolute in the defendant for the term of thirty years from the 10th of February, 1893.

At the hearing no witnesses were sworn. The proofs consist wholly of admissions and documents which prove themselves.

The facts developed were that prior to 1880 the title to the premises stood in one Myers Masten, subject to a mortgage held by Thomas H. Smith, the complainant's ancestor, and that in 1881 Masten bargained and sold the premises to Smith, since deceased, who devised the same to the complainants. The date of the devolution of title was not given. Smith, however, permitted Masten to remain in the occupation and use of the premises until he voluntarily left them in the year 1891, when he let them to Ruffle. The date when that letting to Ruffle took place was not given, but the inference would be that it was in the spring of that year, 1891. Ruffle has been in possession ever since, for part of the time as tenant of Specht, as appears by the answer, but when he attorned to Specht does not appear; nor does the character of the premises appear, except that they contain nearly sixty acres of land and are described in the official papers as "a farm." The fair inference from the admissions and statement of counsel is that neither the complainants nor their devisor, Smith, have ever been recognized as landlords or received any rents. The complainants in their bill base their right to relief solely on the statutory provision for redemption. They do not set up want of notice of the sale and surprise, coupled with the smallness of consideration, making together a case for the interference of the court upon general equitable principles, though the admitted facts indicate that these elements are present in the case.

The first question requiring consideration and decision is the effect of the sale for the taxes of 1891 and the purchase of the premises by the township, and the conveyance by the township to Ruffle, made after the bill was filed.

The conveyance constitutes by its recitals all the proof in sup-

port of that sale. Those recitals are an assessment for 1891 against Myers Masten as the owner, the sale to the township on the 23d of March, 1893, and a certificate of sale by the collector delivered to the township committee February 10th, 1893, which, it is to be observed, is prior to the date of the sale (the certificate was not produced), and an assignment of the certificate by the township to Ruffle on the 6th of March, 1896, about eight months after his purchase for the taxes of 1893, but does not state what consideration was paid by Ruffle to the township. It recites proof by affidavit of Ruffle made November 29th, 1897, that the premises had not been redeemed from the sale of 1893. The deed does not recite that at the sale of the premises no purchaser appeared for them, and by reason of the non-appearance of a purchaser the township bid and purchased, although this non-appearance of a purchaser would seem to be a prerequisite to authority in the township to purchase prescribed by *Gen. Stat. p. 3357 ¶ 354*. In point of fact the recital is that "no person did then and there agree to take said farm for a shorter term and pay said taxes," &c.

By paragraph 1 of the original act of 1879 (*P. L. of 1879 p. 340*) as amended by the act of 1888 (*Gen. Stat. p. 3359 ¶ 368*), the lien of the taxes for two years from December 20th is declared to be first and paramount over mortgages, alienations, liens and encumbrances of every kind and nature whatever, and complainants contend that the effect of this provision is to make the title of the purchaser under the sale of 1895, made to pay the taxes of 1893, paramount and superior to any prior liens upon the premises of whatsoever nature, including the lien of taxes and title of the township. But this position must be taken in connection with the decision of the court of errors and appeals in the case of *Trustees of Public Schools* v. *City of Trenton, 3 Stew. Eq. 667*, where it is held that this paramount lien does not affect the right of the state itself or municipality in which the taxes are levied.

By paragraph 354 (*Gen. Stat. p. 3357*) the township is permitted to purchase the property and to take possession and occupy, and afterwards to sell and convey it to any purchaser

who will pay the purchase price and subsequent taxes, and by paragraph 365 (*Gen. Stat. p. 3358*) after the purchase by the township, subsequent taxes may be assessed in the name of the former owner precisely as if no sale had been made, and the taxes so assessed shall remain a lien on the land and be added to the original purchase-money, and shall he paid before the same can be redeemed. No provision is made for including in the amount to be paid upon redemption any taxes levied prior to those for which the sale is made.

It thus appears that the township had two remedies for the realization of the taxes of 1891, under its certificate of sale— one, to take immediate possession and hold and occupy, and take the rents and profits, and at the end of two years to sell and convey if unredeemed ; or second, under paragraph 365, to continue to tax the property to the owner and hold its original certificate of sale, and annex as a condition to the redemption of the property from the original sale the payment of subsequent taxes.

In this case it seems to have adopted neither of the remedies above suggested, but to have permitted the tenant in possession (who was liable personally under *Gen. Stat. p. 3287* ¶ *33* to pay these taxes) to occupy the premises and to have continued to assess the taxes against the original owner, and then to have made a second sale, at which the landlord of the tenant became the purchaser, and a certificate was issued to him as such.

The question is whether, under these circumstances, the township could itself retain title under the first sale. If it could retain such title, then there were at one time two concurrent outstanding terms of years, held by distinct persons, one by the township and one by Specht. This seems to me a legal impossibility. If the certificate of the township, given to Specht, had any force at all it gave Specht the title to the possession of these premises for thirty years, and such possession was entirely inconsistent with that of the township, and as the township issued its warrant to the collector, authorizing him to make the second sale, it must be held thereby of necessity to have waived its title under the first sale to the beneficial possession of the

Smith *v.* Specht.

premises, and such waiver is, in effect, a waiver of its title under its purchase. The assignment of its certificate to Ruffle, in the spring of 1896, upon payment of the taxes of 1891, seems to me not to have altered the situation. The original lien for those taxes expired by limitation of time.

The contention of the counsel for the complainants that the later sale divested the right of the township under the earlier sale, is supported by the authorities. *Black (H. C.) Tax T.* § *237* and cases cited; *Keen* v. *Sheehan, 154 Mass. 208.*

It is alleged that the money paid by Ruffle to the township was the money of Specht, furnished to Ruffle for that purpose, but no proof was made of this. It was admitted generally by the complainants that the payments for the taxes of 1890, 1892, 1894, 1895 and 1896 were made without any specification as to the party by whom they were made. That admission should, perhaps, be construed as proof of the payment of taxes for those years by Specht, but it did not cover the payment for the term of years covered by the sale to the township now in question. The only proof on that topic is found in the deed from the township to Ruffle, which upon its face recites no payment whatever, but simply an assignment by the township to Ruffle of the certificate of sale. That certificate was not produced in evidence.

I have found no provision in the statute for the assignment by the township of a certificate of sale made to it or for any conveyance to be made by it to a person to whom it had assigned such a certificate of sale. Perhaps the right to sell the premises given by the statute included the right to assign the certificate.

These considerations lead to the conclusion that the conveyance to Ruffle by the township and his assignment to Specht do not give the latter any greater right to the possession of these premises than he had under the tax certificate issued to him upon the sale of 1895.

But I think there is another and perhaps broader ground upon which the title under the deed of the township must fail, except to the extent of being held as a security for the amount paid on it.

Smith v. Specht.

The defendant Ruffle entered into possession of these premises under Masten, who, as now appears, had no title thereto, but was a mere tenant at sufferance of the ancestor of the complainants. It is not shown that he ever paid any rent to Masten, nor when he attorned to the defendant Specht. There is no proof, as we have seen, that the money paid for the tax of 1891 was the money of Specht. The fact that the certificate of sale to the township for the taxes of 1891 was assigned to Ruffle indicates that he paid the amount. Now Ruffle, as tenant, enjoyed the rents and profits of the premises described as a farm. It is to be presumed from the scanty facts in proof that the rents and profits were greater than the amount of the taxes. By section 33 of the act concerning taxes (*Gen. Stat. p. 3287*), which has been in force for one hundred years, he (Ruffle) was liable to pay those taxes, and after he had paid them was authorized to deduct the amount from his rent, unless by the contract between him and his landlord he had agreed to pay the taxes. The enforcement of the current taxes against the tenant has been practiced in this state for one hundred years, and this liability was not affected by the tax being levied in the name of his landlord, real or supposed. *Morrow* v. *Dows, 1 Stew. Eq. 459*.

But, independent of his liability by the statute to pay the taxes, the mere fact that he was in possession as tenant of Masten or of anybody else, or in possession without having attorned to any person, but all the time receiving rents and profits, prevented him from purchasing the premises at a tax sale and holding them against the real owner. At any rate, it put upon him, and upon Specht claiming under him, the burden of proving that he had paid the rent in good faith to another person, supposed to be the landlord, without claiming or receiving any allowance for the taxes.

The general principle is that one who is under either a moral or legal obligation to pay the taxes, or is in anywise interested in the premises, cannot buy the tax title and thereby cut off the title of another party interested, however the interest of either may arise,

Smith v. Specht.

The subject is treated by Mr. Black (H. C.) in his book on *Tax Titles (2d ed.)* §§ *288, 289;* and, while there is some contrariety of decision on the subject, I think the clear weight of authority and the better reasoning are in favor of the rule as stated. Mr. Black says:

"That although it is the duty of the landlord to pay the taxes assessed, in the absence of any agreement to the contrary between the parties, yet the tenant will not be permitted to take advantage of the omission of his landlord to pay the taxes, to terminate the relation between them and obtain title to the land."

He cites and reviews the authorities, which are numerous. The following seem to sustain the rule as stated:

In *Horner* v. *Dellinger, 18 Fed. Rep. 495,* the land was held subject to a perpetual ground rent, and the owner conveyed subject to the ground rent and took back a mortgage. There was no express contract between the owner of the fee and the holder of the rent charge as to the payment of the taxes. While the mortgagor was in possession under his title the taxes fell in arrears, and the premises were sold for their non-payment and purchased by a third party, who held for the benefit of the mortgagee, and afterwards the mortgagor released to the mortgagee, who thus became re-invested with the title. It was held he could not set up the tax title against the owner of the rent charge. The discussion of the question is found on pages 501 and 502. I think the reasoning of the learned judge is unanswerable.

*Gaskins* v. *Blake, 27 Miss. 675,* is an instructive case. That goes the length of holding that if a tenant is indebted to his landlord for any rent in arrears and buys at a tax sale, the presumption will be that he pays the taxes out of the rent due, whether the taxes accrued during the time of his occupancy or not; and it was further held that if he was in possession without admitting any tenancy, as a trespasser, he was also incapable of purchasing the land on a sale for taxes and hold against the true owner. The result is summed up thus by the learned judge: "It is immaterial, therefore, in what light the question

may be viewed. If the defendant is treated as a tenant, then his deed clearly gave him no title. If he takes the ground that he was a trespasser, neither the policy of the law nor sound morality will permit such a defence. And finally, if he takes the ground that he supposed himself to be the owner of the land, then, to be consistent with such position, he must admit that it was his duty to pay the taxes, and that the plaintiffs were not in this respect in default."

In *Waggener* v. *McLaughlin, 33 Ark. 195*, it was held that a tenant might buy land sold for taxes accruing during his tenancy without his fault—that is, sold by reason of the default of his landlord—and set up his title thus acquired against his landlord, but that in equity he would be treated as a trustee for the landlord and compelled to allow redemption, and would not be allowed to speculate on his purchase, or receive more than six per cent. interest on the sums paid for taxes, nor penalties and costs on subsequent taxes paid.

In *Duffitt* v. *Tuhan, 28 Kan. 292*, the case was this: The owner of a lot of land permitted a poor woman to occupy it free of rent during his pleasure. She, or some one in her behalf, erected a small house upon it, and she occupied it free of rent for upwards of ten years, and without any express covenant on her part to pay the taxes. During that time the taxes fell in arrear, the premises were sold to pay them, and she purchased at the sale. It was held that she could not hold the title against the true owner. The court said that the landlord could hardly have supposed that by permitting the party to occupy the premises free of rent, she would neglect her own possession and fail to pay the taxes, and then attempt to cut off the title of her benefactor by buying at the tax sale. That reasoning applies here.

*Lacey* v. *Davis, 4 Mich. 140*, is another case in the same direction.

The subject is elaborately discussed by Chief-Justice Durfee, in speaking for the supreme court of Rhode Island, in *Hall* v. *Westcott, 15 R. I. 373; S. C., 5 Atl. Rep. 629*. It was there held that a mortgagee out of possession cannot become a purchaser at a tax sale of the premises and acquire title against the

mortgagor. He put it on the ground that a purchaser who has an interest in the estate such as would entitle him to redeem if sold to another, will be presumed to have purchased it for the protection of that interest or to save it from sacrifice, and will be required to hold it even after the statutory period for redemption has expired, simply as security for his reimbursement. The chief-justice refers to numerous cases, among others *Woodbury* v. *Swan, 59 N. H. 22*, in which this language is used : "A mortgagor and mortgagee have a unity of legal interest in the protection of their titles against sales for non-payment of taxes and against outstanding tax titles, and it is not equitable that either of them should act adversely to the other in the acquisition and use of such titles."

In *Laton* v. *Balcom, 64 N. H. 92 ; S. C., 6 Atl. Rep. 37*, it was held that a husband could not acquire a title by tax sale of the land of his wife. The facts of the case were that the wife was the holder of a mortgage on land of the plaintiff, which she had foreclosed and afterwards released to the mortgagor. While she was such mortgagee the land was sold to pay the taxes, and her husband bought the premises. It was held that he could not hold them against the mortgagor.

*Langley* v. *Chapin, 134 Mass. 82*, is in the same general direction.

The result of my examination of the authorities is that if I am not justified in inferring that Mr. Ruffle had possession during the calendar year of 1891, yet that he did have possession during the years 1892, 1893, 1894 and 1895, and enjoyed the rents and profits during that time, and that it was not competent for him in the spring of 1896 to accept the tax title from the township and hold it as against the true owner of the land, except as security for the amount of money he paid. And the result is not changed if we assume what was not proven, viz., that Ruffle bought with the money of Specht and held the title for his benefit, for the transaction occurred after Specht purchased at the tax sale of 1895 and became interested in the property, and therefore incapable of completing his title by taking a tax title.

In any view I can take of the case, I am satisfied that the title of Specht under the deed from the township cannot prevail.

The complainants next contend that if that deed is out of the way, they are entitled to redeem the sale to Specht in 1895, upon payment of the amount of the sale, the costs and twelve per cent. interest. It is urged, on the other side, that having come into a court of equity they must do equity, and must repay Specht the amount that he had advanced to relieve complainants' land of the lien of these taxes for all these years.

Complainants contend that the language of the three hundred and thirty-eighth paragraph (*Gen. Stat. p. 3354*) is peremptory. The language of the act is that upon tender of the money the holder of the tax title shall *recover*—that is a plain misprint for " reconvey "—and restore to the owner the real estate. But the act does not by express language give the owner any right to come into a court of equity. He may have his remedy at law upon his tender by bringing an action of ejectment, or such other remedy as the law gives. Hence the case is not an exception to the general rule that he who comes into equity must do equity.

For these reasons I think the complainants are entitled to relief only upon terms, if required by defendants, that they shall pay all the taxes from 1890 onward. But, then, the defendants are not entitled to insist upon those terms against the complainants except upon equitable terms upon their part, and those are that they shall account to the complainants as the admitted owners for the rents and profits of the premises in the meantime; for it is manifestly unjust that these defendants should enjoy the benefit of the use and occupation of these premises and allow the accruing taxes to fall in arrears and be paid by the landlord. Therefore, if the defendants insist upon imposing on the complainants the terms of paying these taxes, there must be an account of the rents and profits, or rather, of the annual occupation value of the premises. In stating that account the defendants will not be entitled to a credit of twelve per cent. interest on the payments made by them for any of the

Hudson Sav. Inst. *v.* Carr-Curran Paper Mills Co.

taxes except those of 1893; and for those, as the complainants have put themselves upon a strict tender under the statute, they must pay the amount which they tendered, without interest.

If the defendants do not press a demand for payment of taxes other than those tendered, then the complainants will be entitled to the precise decree prayed for, with costs.

If the defendants insist upon the repayment of all these taxes, then the matter may be settled by evidence produced in open court without a reference.

