WILLIAM R. HOFER, PLAINTIFF-APPELLANT, v. JOHN J. CARINO AND ANITA R. CARINO, DEFENDANTS-RESPONDENTS.

Argued March 6, 1950—Decided March 27, 1950.

*Mr. James B. Avis* argued the cause for plaintiff-appellant.

*Mr. E. Milton Hannold* argued the cause for defendants-respondents (*Messrs. Hannold & Hannold,* attorneys).

The opinion of the court was delivered by

CASE, J. This action in ejectment concerns a disputed boundary line. Plaintiff appeals from the judgment entered on the granting of defendants' motion for a direction of verdict. He alleges as error the granting of that motion and the denial of a like motion in his own behalf.

The land is in the village of Williamstown, Gloucester County, near the intersection of a highway formerly known as Williamstown and Coles Mill Road, now Main Street, with another highway called Blue Bell Road. On April 17, 1920, the Hammonton Trust Company executed three conveyances, one to the predecessor in title of the plaintiff, another to the predecessors in title of the defendants and the third to the predecessor in title of Kathryn O. Miller, not a party to these proceedings. The Hofer land lay at the immediate intersection of the two highways; the Carino land, on the Blue Bell Road. The two tracts adjoined except for a short distance near the street where they were separated by the Miller tract, a wedge-shaped plot fronting on Blue Bell Road. The judgment extends the Carino line thirteen and one-half feet at the road frontage into what has heretofore been regarded as the Miller property and from there on back causes his line

to overlap both Miller and Hofer, as contended by those owners, by a varying distance approximately two feet in width at the narrowest point.

The deeds, although executed on the same day, were not given simultaneous recording. The deed for the Carino property was recorded May 13, 1920, that for the Miller tract May 15, 1920, and the one for the Hofer tract June 8, 1920. All three descriptions start with beginning points related to a single monument, described as a stone at the intersection of the center lines of the Blue Bell Road and of the Williamstown and Coles Mill Roads. The Hofer description starts: "Beginning at a stone in the Williamstown and Coles Mill Road, now called Main Street, and running thence (1) south 41 degrees 20 minutes east 50.82 feet to a stone in the center of the aforesaid street where the Blue Bell Road intersects the same; thence (2) south 1 degree 30 minutes east 19.5 feet to a point in the center of Blue Bell Road * * *." The description of the Miller tract is: "Beginning at a point in the center of Blue Bell Road at a distance of 19.50 feet from a stone in the center of Williamstown and Coles Mill Roads marking the intersection of said roads and extending thence (1) south 49 degrees west 98.5 feet, thence (2) south 86 degrees east 80.90 feet to the center of Blue Bell Road, thence (3) north along said road 63 feet to the place of beginning." The Carino description starts thus: "Beginning at a point in the center of Blue Bell Road at the distance of 82.5 feet from a stone in the center of the Williamstown and Coles Mill Roads, marking the intersection of said roads * * *;" and the last two courses read: "(8) east 33 7/12 feet to the center of Blue Bell Road, thence (9) north along the center of said road 63.2 feet to the place of beginning." The deed by which the Hammonton Trust Company acquired title is likewise monumented: "Beginning at a stone in the Williamstown Coles Mill Road, running thence (1) south 41 degrees 20 minutes east 77 links to a stone in the center of the aforesaid road and where Blue Bell Road intersects same, thence (2) south 1 degree 30 minutes east 1 chain and 50 links to a stone in the middle of the last mentioned road * * *."

It will be observed that the sum of the road distances in the deeds out of the Hammonton Trust Company checks fairly accurately with the sum of the road distances in the deed by which it acquired title.

The stone called for at the intersection of the center lines of the two roads is not now there, but the point of intersection is definitely located, and is identified by surveyor's marks on the street pavement. It is suggested on behalf of defendants that perhaps the Williamstown and Coles Mill Road, or Main Street, has been widened and that the location of the center line has therefore changed; but there is no proof that such is the fact. Aside from the roads and their center lines and a tract of land called the Suter tract, adjoining Carino on the east, there are no monumented points or lines in any of the deeds. In the description of the Carino tract the sixth course, which is the rear line of that property and slightly more than 300 feet from the road frontage, is "south 55 degrees east 42.46 feet to a point, being corner of lands of one Suter," and the next course is "thence (7) north 44 degrees 30 minutes east along said Suter's land 300 feet to a point." While this reference to the Suter lands would, if they were accurately located, give a degree of definiteness, there is proof that the tract and the lots taken from it vary approximately fourteen feet, as they appear on the ground, from their deed descriptions and encroach upon Carino to that extent. And that is about the amount of disputed frontage which the latter claims on the opposite side.

The intersection between the center lines of Main Street and Blue Bell Road is a monument; not so controlling as if the original stone had been found rather than surveyor's marks in the pavement, but, nevertheless, a monument. The Suter line, although placed in some doubt by the evidence that the ground erections do not correspond with the deed descriptions and the calls contained therein, is nevertheless conceded, indeed contended, by counsel for both sides to be a monument. There is conflict between those two monuments.

Further doubt is thrown upon the superiority of the Carino description by this provision in the deed:

"Subject nevertheless to a perpetual right of way of the grantors herein and W. J. Green, et' als. and Iven Tilton whose property bounds on said right of way, their heirs and assigns, over a strip of land eight feet wide beginning at a stone in the center of Blue Bell Road marking the southeasterly corner of the above described tract, thence running entirely the distance of ninety-five and nine tenths feet along the first course by the northerly boundary of the tract above described."

By that limitation a strip of Carino's land 8 feet in width running the entire length of, and bounded by, his first course is dedicated to the purposes of a right of way for the use of the adjoining lands. For the distance of 80.91 feet the right of way runs along the Miller tract, of which the original grantee was one Iven Tilton, and for the remaining distance it runs along an equivalent line of the Hofer tract, of which the original grantees were William J. Green and others. These names will be recognized as the ones stated in the reservation of right of way. It could be found from the proofs that at the time of the conveyances out of the Hammonton Trust Company, and for years before and after, a building stood on the Miller tract served by that right of way and occupying a site that is bisected by the line for which Carino now contends. It is not suggested that any right of adverse possession accrued by reason of that fact; but it is argued with force that the contemporaneous acceptance given by the parties to the location of the driveway, and consequently to the location of the first course of the Carino description, is evidential. *Jackson v. Perrine*, 35 *N. J. L.* 137 (*Sup. Ct.* 1871) ; *Alt v. Butz*, 81 *N. J. L.* 156 (*Sup. Ct.* 1911).

It is also in the proofs that along the course where Carino's description, if followed from its beginning point, would put his east line, but where his engineer refuses to locate that line because to do so would be to encroach upon what is said to be the property of Suter and others, there are ancient marks, such as an old fence line and a retaining wall, in such locations and of such significance as to spell authenticity. Defendants' engineer, on the assumption that the apparent Suter line was accurate, reversed the directions in the description, making correlative changes in the courses, and so worked

from that line back to a new beginning point, for which he now contends.

An ambiguity appears in that the description in the Carino deed according to its courses and distances does not close. The last course, instead of returning, as by its terms it should, to the beginning point, ends twenty-nine feet therefrom in the property of a stranger on the far side of the street. There was additional testimony about old iron fences ·and fence posts at or near other disputed lines.

The trial court followed the theory that the defendants' deed was the first to go on record and that consequently the area required by plotting that conveyance according to its courses and distances should determine the extent of its location as against the properties out of the same grantor by deeds later recorded. That theory did not weigh the relative value of mere courses and distances as compared with monuments, gave no effect to the conflict between monuments, and, of course, disregarded all extrinsic proof. Moreover, the conveyance was not of the land by acreage.

The construction of deeds and other writings in a cause rests with the court. A question of construction is a pure question of law to be decided by the court upon the terms of the instrument itself. ·But where there is a latent ambiguity, evidence *aliunde* is admissible, and a question of location, or of the application of the grant to its proper subject matter, is a question of fact to be determined by the jury by the aid of extrinsic evidence. Whenever the location of the premises is doubtful, through uncertainty, inconsistent or conflicting terms of the description in the deed, the proper location of the premises becomes a question of fact to be determined by the jury on all of the evidence. *Curtis v. Aaronson,* 49 *N. J. L.* 68, 71 (*Sup. Ct.* 1886) ; *McCann v. McCarthy,* 120 *N. J. L.* 191 (*E. & A.* 1938). And where the deed description does not close, it is proper to resort to extrinsic evidence, which results in the issue becoming one of fact for the jury. *Calalro v. Chabut,* 72 *N. J. L.* 458 (*E. & A.* 1905).

It is a general rule, in the interpretation of the descriptive words in deeds and grants, that courses and dis-

tances, and admeasurements and ideal lines, should yield to known and fixed monuments, natural or artificial, upon the ground itself. *Blackman v. Doughty,* 40 *N. J. L.* 319, 326 (*E. & A.* 1878). The line of an avenue or public way, if its location is not in dispute, is a monument. *Roosevelt v. Shapiro,* 85 *N. J. L.* 626 (*E. & A.* 1913); *McKenzie v. Gleason,* 69 *N. E.* 1076 (*Mass.* 1904); *Peck v. Denniston,* 121 *Mass.* 17 (1876). Likewise, when definitely located, the land of an adjoining proprietor. *Bielby v. Blinn,* 151 *A.* 357 (*Conn.* 1930); *McCausland v. York,* 174 *A.* 383 (*Me.* 1934); *Holmes v. Barrett,* 169 *N. E.* 509 (*Mass.* 1930); *Di Maio v. Ranaldi,* 142 *A.* 145 (*R. I.* 1928). The identity of a monument found upon the ground with the one referred to in the deed, *McCausland v. York, supra,* and inconsistency in monumented courses, *Wilkinson v. Lyons,* 87 *N. J. L.* 200 (*E. & A.* 1914), are questions of fact for the jury, not questions of construction for the court. The starting call of a description is considered an important call, perhaps more important than any other, but it does not always control when there is a conflict. *Thompson on Real Property (Permanent Ed.), Vol.* 6, § 3331; *Ocean Beach Association v. Yard,* 48 *N. J. Eq.* 72, 89 (*Ch.* 1891).

For the reasons stated we conclude that the case should have gone to the jury. The granting of the defendants' motion was error; the denial of the plaintiff's motion was not.

Defendants' motion was made and granted with some confusion in the technical disposition. The motion was that the court direct a verdict of "dismissal." The court directed the jury to return a verdict of "no cause of action." The "judgment" placed before us is the clerk's record that the jury returned a verdict for "dismissal." The terminology of a "dismissal" of an action by a jury is novel and is not within the application of the rules. *Rule* 3:41 relates to dismissal of actions, and directs that nonsuits be superseded by that procedure. Nonsuits were granted by the court, not the jury; and the rules provide for dismissal only by (1) the voluntary act of the plaintiff, (2) stipulation by the parties or (3) order

of the court. The jury verdict should not be designated a dismissal. We have treated the present procedure herein as a directed verdict for the defendants.

The judgment below will be reversed and the cause remanded for a trial *de novo.*

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD and BURLING—5.

*For affirmance*—None.