925 A.2d 45 (2007)
393 N.J. Super. 599
Peter STRANSKY, Plaintiff-Appellant/Cross-Respondent,
v.
The MONMOUTH COUNCIL OF GIRL SCOUTS, INC., John Williams and Lynnda Williams, his wife, Defendants-Respondents/Cross-Appellants, and
The Manasquan River Regional Sewerage Authority, and the Township of Howell, Defendants-Respondents, and
Susan McClure, D & D, Inc., D & D Landscaping, Inc., Matrix Capital Bank, Mon-Oc Federal Credit Union, American Mortgage Network, Inc., Mortgage Electronic Registration Systems, Inc., as Nominee for Division of Wells Fargo Home Mortgage, a Division of Wells Fargo Bank, NA, Defendants.
Monmouth Council of Girl Scouts, Inc., Third-Party Plaintiff,
v.
Transnation Title Insurance Company and Thomas Lynch, Lynch Giuliano & Associates, P.A., Third-Party Defendants.
John Williams and Lynnda Williams, his wife, Third-Party Plaintiffs,
v.
Citicorp Mortgage, Inc., Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 2007.
Decided June 15, 2007.
*47 Peter Stransky, appellant/cross-respondent, argued the cause pro se.
Mark Williams, Newark, argued the cause for respondent/cross-appellant Monmouth Council of Girl Scouts, Inc. (Mehr, LaFrance & Williams, attorneys; Mr. Williams, on the brief).
Tennant D. Magee, Sr. argued the cause for respondents/cross-appellants John & Lynnda Williams (Maggs & McDermott, attorneys; Mr. Magee, on the brief).
Bongiovanni & Pavliv, Howell, attorneys for respondent Township of Howell relied on the brief filed on behalf of respondents/cross-appellants, John and Lynnda Williams.
Cleary, Alfieri, Jones & Hoyle, Matawan, attorneys for respondent Manasquan River Regional Sewerage Authority relied on the brief filed on behalf of respondents/cross-appellants, John and Lynnda Williams.
Before Judges LEFELT, PARRILLO and SAPP-PETERSON.
The opinion of the court was delivered by
LEFELT, P.J.A.D.
Plaintiff Peter Stransky and defendants John and Lynnda Williams (Williams) are owners of adjoining properties *48 in Howell Township. After Williams[1] granted a sewer easement to defendant Monmouth Council of Girl Scouts, Stransky sued his neighbors and the Girl Scouts, claiming that the easement had been unlawfully placed on his property and that the Girl Scouts were trespassers. The trial court conducted an evidentiary hearing to establish the location of a Spanish oak tree which, although no longer in existence, was a boundary monument utilized in Stransky's deed. Despite the court's location of the Spanish oak, Williams and Stransky still could not agree on the boundary between their properties. Consequently, the court directed Richard F. Smith, Jr., to prepare a survey based upon the court's location of the missing boundary monument. The boundary line established by Smith reflected that the easement had been placed upon Stransky's property and, therefore, the court entered judgment in his favor. Stransky, Williams, and the Girl Scouts all appealed.
On appeal, Stransky argues that the boundary should have been determined by a jury and that his neighbors lacked legal title to their property as a fraud had been perpetrated in a prior conveyance. Stransky also questioned the trial court's location of the Spanish oak, the appointment of the surveyor, and argued that the surveyor failed to comply with the trial court's direction.
Williams and the Girl Scouts also appealed, arguing that the trial court erred in the rationale it utilized to resolve this case. These parties contend that the conveyances to Williams and Stransky established the proper boundary between the two properties and reveal that the sewer easement is on Williams' property rather than Stransky's. We agree with this position and reverse and remand for entry of a judgment in Williams favor.

I.
The lots directly at issue in this land dispute are located in Howell Township, Monmouth County, and are designated 26, 27, 28, and 29. Williams owns lots 26 and 27, and Stransky owns lots 28 and 29. Lot 28 is located to the west of lots 26 and 27. Lot 29 is located to the north of lot 28. The Yellow Brook runs in a roughly north-south direction to the west of lots 28 and 29, and intersects the Manasquan River at the southwesterly corner of lot 28. The river then flows in a south-easterly direction along the southern border of lot 28, and then turns in a southerly direction along lot 26.
In 1958, Adele A. Tomberg sold lots 28 and 29 to Williams Sr. and his wife,[2] who are the parents of plaintiff John Williams. The deed, which was recorded, described the conveyed tract by using a natural monument for one course, "a Spanish Oak tree standing on the edge of the river bank." Distances were described by using chains and links rather than feet and inches and reference was made to the owners of nearby lands almost two hundred years ago.
Also in 1958, Robert Greenberg performed a survey of the 10.0 acre tract of lots 28 and 29, conveyed by Tomberg, depicting a stake near a blazed Spanish oak tree at the bottom of the drawing next to the Manasquan River, and referring to lands formerly of James Johnson to the east of the boundary line drawn from that stake. This survey set the length of the disputed boundary line at 891 feet.
*49 In 1974, Murray L. Rosenzweig sold and conveyed lots 26 and 27 to Williams Sr. and plaintiffs John and Lynnda Williams. This deed was recorded and recited that the property contained "7.73 acres according to a survey made by M. Eugene McDonald," and that the description contained in the deed had been drawn from that survey. Then, in 1975, a quiet title judgment in favor of Williams Sr. was entered. The parcel involved was a small semi-rectangle on the south-east portion of Lot 29, between lots 27 and 28, encompassing about three and one-half acres.
Thus, from 1974 through 1982, Williams Sr., together with Williams, owned lots 26 and 27 and, on his own, also owned lots 28 and 29. In 1982, by deed filed in 1984, Williams Sr. conveyed his interest in lots 26 and 27 to Williams. The deed recited that the lots contained 7.73 acres, and described the property by reference to the McDonald survey. This survey set the length of the disputed boundary line at 835 feet.
In 1986, two years after the deed for lots 26 and 27 had been recorded, Williams Sr. conveyed to Stransky, and his wife Ivanka, lots 28 and 29. This conveyance included the small parcel which had been the subject of the 1975 quiet title judgment. The deed was recorded in 1987, and specifically referenced that the land conveyed was bound "on the east by the premises conveyed to John F. Williams, Sr. [] by Book 3867 of Deeds page 834, the Rosenzweig deed, in which the premises conveyed were based upon the McDonald survey and were subsequently conveyed by Williams Sr. to Williams as lots 26 and 27."
The contract of sale between Williams Sr. and Stransky recited that the property consisted of approximately fourteen, but not less than thirteen and one-half, acres. A survey affidavit executed by Williams Sr. recited that the Greenberg survey had been examined and there were no changes in the boundary lines. Commonwealth Title insured Stransky's title as it had Williams' years before.
The description in Stransky's deed includes a reference to the Spanish oak tree and a reference to a southern boundary on land "formerly belonging to Peter Cook, deceased, now James Johnson." This description is identical to the description in the 1958 Tomberg to Williams, Sr. deed, with the exception of the closing language in the 1958 deed: "preference being had to a deed given by Peter Cook wood chopper and wife, to Joseph Goodenough, dated November 20, 1817, and recorded in the clerk's Office at Freehold, December 4, 1817, will more fully appear."
Although Stransky did not order a new survey in conjunction with his purchase of lots 28 and 29, in 1987 at Stransky's request, Crest Engineering Associates, Inc. surveyed the lots. The Crest survey showed an iron pipe located at the very bottom of the drawing next to the Manasquan River, and set the length of the disputed boundary line at 1,158 feet.
Then in 1990, Ivanka Stransky conveyed her interest in lots 28 and 29 to Stransky. That deed contained the same description of the lots, including reference to the Spanish oak tree, as the 1987 deed in which Williams Sr. conveyed the lots to Stransky and his wife.
Over the ensuing years, neither Stransky nor Williams fenced their land, cleared it to the common boundary line for cultivation, or did anything else which would physically evidence the owner's intent as to the location of the border.
In 1997, Williams conveyed a sanitary sewer easement and right-of-way to defendant Girl Scouts. The easement was recorded in 1998 and reflected its location "within Lots 26 and 27." In 2000, the Girl *50 Scouts conveyed this easement to Howell Township and the Manasquan River Regional Sewer Authority. Stransky, contending that the easement was not on lots 26 and 27 but was on his property, commenced the law suit that culminated in this appeal.

II.
After conducting a lengthy bench trial, the trial court found Stransky's chain of title superior to that of Williams and consequently, Stransky's deed description controlled. The court further reasoned "that Peter Cook was the original common grantor of both tracts." This was so even though Peter Cook never owned all of the property involved in this dispute. Stransky's property "was described as consisting of 10 1/2 acres as early as 1817 [and the court found that] [t]he original description of its boundaries has remained constant and . . . the same description of the property has been utilized with each transfer."
The trial judge did not agree with Williams' argument that "Williams, Sr. had an interest in both properties in question that supplanted Peter Cook as the common grantor of both tracts." The judge believed it determinative that Williams Sr. "did not solely own both properties, such that an examination into their intent at the time they transferred the property to Stransky (and then transferred the other property to Williams, Jr.) might be relevant." Instead, the court concluded that "[t]he repeated use of the same deed description down through the ages represents irrefutable evidence of [the desire to transfer precisely what had been previously received] and the claim that the court should somehow attempt to gain insight into the subjective intent [of] any such transferor later possessed is preposterous."
The court thus believed that the description of Lots 28 and 29 consistently utilized the missing Spanish oak tree as its boundary line to lots 26 and 27. Consequently, the court found the location of the tree from the evidence at the hearing and directed Smith to prepare a survey based on this location. The Smith survey established the length of the disputed boundary line at 1,224.16 feet, and found that the easement had been located on Stransky's property. Based on this finding, the court subsequently entered judgment in Stransky's favor.

III.
Williams, Stransky, and the Girl Scouts all have problems with the approach taken by the trial court to reach its decision. Williams and the Scouts argue that the trial judge erroneously fixated on the location of the Spanish oak and in the process lost sight of the parties' intention. Even though Stransky prevailed, he claims the court wrongly located the Spanish oak and erroneously instructed Smith to prepare the survey based upon that location. The resulting survey, according to Stransky, "ignores historical monuments and their locations" and "creates an `unsupported new line' which subdivides . . . [Stransky's] property and ignores [the] superiority of . . . his title."
Stransky maintains, on appeal, that the northeast corner of his property should have been drawn through a large white oak tree, which, according to Stransky, was located well to the east of lots 26 and 27. He states, "[s]imply put, this ancient boundary line is not between Stransky and Williams but is located at the historical location of the large white oak tree monument found in the maps, deeds, and surveys presented to the Court." We reject these arguments for the same reason we believe the judge should not have located *51 the Spanish oak tree to resolve this dispute.

IV.
The construction of a deed is a question of law. Hofer v. Carino, 4 N.J. 244, 250, 72 A.2d 335 (1950). When an ambiguity is present, however, a factual issue is presented and extrinsic evidence can be considered to aid the construction effort. Ibid. Here, much extrinsic evidence was presented partly in an effort to locate the "calls" referenced in the deeds describing the property in dispute.
A "call" is a landmark chosen by a surveyor or utilized in a deed to designate real property boundaries. Black's Law Dictionary 196 (7th ed.1991). In this case, the Spanish oak tree was one of the calls utilized for this purpose. Generally, in boundary disputes, permanent and natural monuments, like the Spanish oak tree, control over all other calls. See S.R.H. Corp. v. Rogers Trailer Park, Inc., 54 N.J. 12, 20, 252 A.2d 713 (1969). This is so because such a reference is "the most satisfactory evidence" of the proper boundary, ibid., and is based upon a recognition that surveyors and chainbearers often "ma[d]e mistakes in handling the instruments of measurement and in recording the observed results." McCullough v. Absecon Beach Land & Imp. Co., 48 N.J. Eq. 170, 185, 21 A. 481 (Ch. 1891).
In construing deeds, a hierarchy of calls has been utilized over the years to determine the proper boundary of the property conveyed. S.R.H. Corp., supra, 54 N.J. at 20, 252 A.2d 713. Calls will generally control in descending order of priority by monuments (natural being preferred over human-made structures), followed by direction, distance, and quantity of the land conveyed. See 6 Thompson, on Real Property § 3044 at 576 (1962). The established hierarchy has been described as follows:
Natural monuments (e.g. trees) prevail over artificial monuments (e.g. surveyor's stakes), which prevail over references to adjacent boundaries (e.g., "to Hunter's property line"), which prevail over directions (e.g. northwest), which prevail over distances (e.g. 30 feet), which prevail over area (e.g., 5 acres), which prevails over place names (e.g., "the Quinn farm").
Jesse Dukeminier & James E. Krier, Property 630 (3rd. Ed. Little, Brown & Co.1993).
"When a monument referenced in a deed is missing, it does not lose its significance as a monument if its original location can be determined." Lloyd v. Benson, 910 A.2d 1048, 1051 (Me.2006). If the monument can be reestablished through extrinsic evidence, it "has the same legal significance as if it were not missing." Ibid. Generally, "parol evidence relating to the location of [a missing monument is] admissible." Schroeder v. Engroff, 33 N.J. 204, 206, 162 A.2d 845 (1960). Therefore, if the location of a missing monument can be determined, it will generally "prevail over the deed's course and distance calls." Theriault v. Murray, 588 A.2d 720, 722 (Me.1991).
Given this general understanding of the hierarchy of calls, we can understand why the trial court attempted to locate the missing Spanish oak tree, especially because the tree was referenced in the 1817 deed, the 1958 deed from Tomberg to Williams Sr., and the 1987 deed to Stransky. However, it was not necessary to establish the tree's location to decide this dispute.
The purpose of call priorities, such as the general preference for natural monuments, is subordinate "to the manifest *52 intent of the grantor if this can be ascertained." S.R.H. Corp., supra, 54 N.J. at 20, 252 A.2d 713 (quoting 6 Thompson, supra, § 3044 at 575); see also Schroeder, supra, 33 N.J. at 205-06, 162 A.2d 845. "[T]he prime consideration in determining the meaning of the basic title instruments is the intention of the parties." Normanoch Assoc., Inc. v. Baldasanno, 40 N.J. 113, 125, 190 A.2d 852 (1963). Courts should interpret a deed's words to effectuate the grantor's intent, so far as possible. E.g., Jefferson v. Davis, 25 N.J.Super. 135, 140, 95 A.2d 617 (Ch.Div.1953).
In the dispute at issue, we believe the intent of Williams Sr. was actually and constructively expressed to Stransky and his wife by the conveyance of lots 28 and 29 in 1987, after having previously conveyed lots 26 and 27 to Williams.
In 1958, Williams Sr. commenced ownership of lots 28 and 29. The 1974 deed for lots 26 and 27 from Rosenzweig to Williams Sr. and John and Lynnda Williams incorporated the McDonald survey, which established the boundary lines for those tracts. The western boundary of lots 26 and 27 abutted lots 28 and 29, which were already owned by Williams Sr. As of 1974, therefore, Williams Sr. had a tenancy-in-common with John and Lynnda Williams in lots 26 and 27, and Williams Sr. owned lots 28 and 29 outright.
When Williams Sr. conveyed his interest in lots 26 and 27 to John and Lynnda Williams in 1982, that deed contained the description and boundary lines established by the McDonald survey. Williams Sr., therefore, intended to convey all property within the boundaries established by that survey, thereby adopting the McDonald survey boundaries to delineate the dividing line between his properties, lots 26, 27, 28, and 29. When he conveyed lots 26 and 27 to John and Lynnda Williams he intended that their western boundary be reflected in the McDonald survey.
Subsequently, when Stransky took title to lots 28 and 29, the deed recited that his land was bounded on the east by property owned by Williams Sr. Stransky's deed referenced the Rosenzweig deed to Williams Sr. for lots 26 and 27, which was the property to the east of Stransky's lots. A title search would have disclosed the Rosenzweig deed, which noted that the conveyance contained "7.73 acres, according to a survey made by M. Eugene McDonald . . . from which the . . . description [set forth in the deed] had been drawn." The search thus would have placed Stransky on notice of the McDonald survey, and that lots 26 and 27 had been deeded by Williams Sr. to Williams and recorded more than two years before. See N.J.S.A. 46:22-1. Thus, Stransky took title subject to the prior deed to Williams establishing the western boundary of lots 26 and 27, which was the eastern boundary of Stransky's lots 28 and 29. After all, Williams Sr. could only have transferred to Stransky what was left after having deeded lots 26 and 27 to Williams several years before.
Even assuming that part of Stransky's property was included in the McDonald survey, Williams still prevails in this dispute. Because New Jersey is a notice/race state, "if a common grantor sells the same land to two persons, the first to record . . . will prevail." Palamarg Realty Co. v. Rehac, 80 N.J. 446, 454, 404 A.2d 21 (1979). Williams Sr. made his conveyance to his son about five years before he conveyed any land to Stransky. That deed was recorded two years before the conveyance to Stransky. Stransky, therefore, could not receive from Williams Sr. that which Williams Sr. had already conveyed to his son.
Accordingly, we conclude that the boundary between Stransky and Williams *53 had been established by the McDonald survey. The Scouts relied on this survey to locate the sewer easement, and all parties agree that the McDonald survey places the Girl Scout easement on Williams' property. Therefore, we must reverse the trial court's judgment to the contrary and remand for the entry of a judgment conforming to this determination.

V.
Stransky also contends, in his appeal however, that Williams does not have legal title to lots 26 and 27 because the chain of title includes a fraudulent conveyance. He points to a 1939 conveyance to three individuals with the sur-name Schwartz by the executor of Harry Leland's will. He claims that a conveyance ten years later by Schwartz to Rosenzweig had been fraudulent because Schwartz never owned the land and that the fraud was continued by the 1974 conveyance from Rosenzweig to Williams Sr. and John and Lynnda Williams.
The trial court has not ruled on this contention and the record has not been fully developed. Our review of the record reveals that Stransky has not properly presented this issue to the trial court. Writing letters and sending packages to the court and parties apprising them of this argument is not properly presenting the issue for decision. Consequently, the contention would ordinarily not be considered by us and could be rejected solely on this basis. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
In any event, even if Stransky could prove that a fraud had been committed, his contention that such a fraud would divest Williams of title is dubious at best. Preliminarily we note that Stransky did not seek to update his deed or exert any dominion over the property he claims to now own until thirteen years after his purchase of lots 28 and 29. The Schwartz-Rosenzweig transaction took place over a half century ago in November 1950. The property had been conveyed by Rosenzweig to Williams Sr. and John and Lynnda Williams in 1974, apparently for $33,400, and their interest in the land continues to date. Accordingly, any number of legal theories would preclude ousting Williams of title, including bona fide purchaser for value, see Persons v. Bergmann, 182 N.J.Super. 476, 480, 442 A.2d 647 (App. Div.1982); Hyland v. Kirkman, 204 N.J.Super. 345, 377, 498 A.2d 1278 (Ch. Div.1985); B and H.S. Corp. v. Holly, 198 N.J.Super. 83, 88, 486 A.2d 862 (App.Div. 1984); adverse possession, see J & M Land Co. v. First Union National Bank, 166 N.J. 493, 517, 766 A.2d 1110 (2001); and considerations of equity, e.g., O'Neill v. State Highway Dept. of N.J., 50 N.J. 307, 319, 235 A.2d 1 (1967), Noyes v. Cohen, 123 N.J.Super. 471, 481, 303 A.2d 605 (Ch.Div.1973), Reeves v. White, 84 N.J. Eq. 661, 668, 95 A. 184 (Ch.Div.1915), Smith v. Specht, 58 N.J. Eq. 47, 58, 42 A. 599 (Ch.Div.1899). Accordingly, we reject Stransky's fraud contention on the merits.

VI.
Stransky further argues that the attempt "to locate the true boundary [presumably through the white oak tree] has been made impossible through lies and cover-ups which have been in action prior, during and after this trial." Leveling accusations of "white collar crime," Stransky charges the trial court with nonfeasance and hints of malfeasance. He asserts that a jury trial, to which he was entitled, would have resulted in a "`complete verdict' on the boundary."
We reject the scurrilous charges against the trial court as completely *54 unsupported by the record and totally meritless. Any party demanding a trial by jury for "any issue triable of right by a jury" must make such a demand "in writing not later than 10 days after the service of the last pleading directed to such issue." R. 4:35-1(a). A waiver of a jury trial will occur if a required demand is not served. Ibid. The demand "may not be made for the first time in an amended or supplemental pleading unless new issues triable by jury are raised therein, and if so, it is only as to those issues for which a jury trial will be required." Pressler, Current New Jersey Court Rules, comment 1 on R. 4:35-1 (2007).
Stransky raised the issue revolving around the location of the boundary line in the first count of the original and subsequent amended complaints. Since no jury trial was demanded in the original complaint (or the amended through second amended complaints, for that matter), a trial by jury of this issue has been waived. Pressler, supra, comment 1 on R. 4:35-1.

VII.
In conclusion, on Williams and the Scouts cross-appeals, we reverse and remand to the Chancery Division for entry of a judgment reflecting that the boundary between Stransky's and the Williams' properties be set by the McDonald survey. We reject all of Stransky's arguments on appeal as lacking merit and dismiss his appeal. We do not retain jurisdiction.
Reversed and remanded.
NOTES
[1] For ease of reference only, we refer to both John and Lynnda Williams in the singular form as Williams.
[2] For the readers ease, each time we refer hereafter to Williams Sr. in this opinion, we intend to also include his wife, Stella.