DEWEY LAND COMPANY et al., appellants,

*v.*

HENRY E. STEVENS, JR., et al., respondents.

[Argued July 2d, 1913.    Decided June 15th, 1914.]

1. Where the court is evenly divided there is no decision of the legal question discussed; the result depends upon the fact that the question put is whether the judgment shall be reversed.

2. A riparian grant by the state can have no more effect upon the title to land not owned by the state than a deed by any person other than the real owner.

3. Land bounded by the ocean was conveyed in 1856; subsequently the ocean encroached on the beach and the land in dispute was under water; while that condition existed, a grant was made by the riparian commissioners to the defendant's predecessor in title; subsequently the ocean receded and the former owners made grants, under which alone the plaintiffs claimed land embraced in the state's riparian grant; no claim was made by complainants as riparian owner to the land in question by accretion.—*Held*, that complainants could not sustain their claim to the land under the grants from the former owners as against the state's riparian grant.

On appeal from a decree of the court of chancery made by the chancellor.

*Mr. George A. Bourgeois* (*Messrs. Bourgeois & Coulomb* on the brief), for the appellants.

*Mr. Harvey F. Carr* (*Messrs. Wilson & Carr* on the brief), for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

This is a bill to quiet title to land formerly under the waters of the Atlantic ocean. The bill originally filed claimed title by accretion. This claim was abandoned and by an amended bill,

the complainants set up title by deed from former owners. The theory of the bill is that the land was fast land in 1852; that the ocean afterward covered it, and then receded leaving it fast land as before, so that the former title revived. The defendants claim under a riparian grant from the state on June 28th, 1900. The chancellor conceived himself bound by the view expressed by Mr. Justice Garrison in *Attorney-General* v. *Sooy Oyster Co., 78 N. J. Law 394,* and dismissed the bill. This was due to a misapprehension of that case. As the court was there evenly divided, there was no decision on the legal question discussed; all that was decided was that the judgment below must be affirmed, as there was not a majority for reversal. In such cases the result depends upon the form in which the question is put and under the practice of the house of lords, which we follow, the question is put for reversing and not for affirming. *Macq. Pr. 27.* But the present case is not within the reason of the memorandum of Mr. Justice Garrison. The question there was whether the land in dispute was of the character that the riparian commission was authorized by the legislature to convey; there was no question that it belonged to the state. Those who voted to affirm the judgment thought that the question whether the riparian commission had power to convey was one for them to decide for themselves in the first instance, and their decision as evidenced by their grant could not be attacked collaterally in a court of law. It was not suggested that a riparian grant could have any effect upon the title to land not owned by the state. It could have no more effect than a deed by any person other than the real owner. Obviously, under our constitutional provisions, the state could not take a man's title by any grant it might make, nor could it deprive him of the right to have that title passed upon by a jury. In the present case, if the land did not belong to the state, its grant was ineffective; if the land belonged to the state at the time of the grant by reason of then being under tide water, but has reverted to its former owners by matter arising after the grant, the complainants are not in the position of questioning the grant, but of conceding its validity and claiming that the title thereby granted has since ceased to be effective.

We think the complainants may maintain their bill if they have made out their title. This title we must now examine.

The land formerly belonged to Robert B. Leeds. He conveyed in 1856 to John McClees by a description bounding on the edge of Absecon inlet. McClees conveyed in 1897 to the Atlantic City Beach Front Improvement Company by a description bounding on the high-water mark of Absecon inlet and the Atlantic ocean. At that time the ocean had encroached many feet upon the beach and the land now in question was under water. The complainants claim title by various mesne conveyances under the deed to the Atlantic City Beach Front Improvement Company to land therein described. The original bill in this case was filed in 1909. In 1912 the Dewey Land Company took a quitclaim deed from the heirs-at-law of Robert B. Leeds for a tract running to high-water mark as it existed in 1852. It had, on November 1st, 1911, taken a quitclaim deed from John McClees, running to high-water mark as it existed April 15th, 1853. It is too clear for argument that the complainants acquired no title to the *locus in quo* by virtue of the deeds from the Atlantic City Beach Front Improvement Company; the title so acquired stopped by the very terms of the description with the then existing high-water mark, and the state's title began at that point. Inasmuch as all claim by accretion is waived, the complainants' amended bill must fail unless they acquired title from the Leeds' heirs or McClees. Their position is that the title to the land is not lost if when the ocean recedes the land can again be known and reclaimed by admeasurement; to sustain their position they refer to what we said in *Ocean City Association* v. *Shriver, 64 N. J. Law 550*. That principle, however, is not applicable to the present case. If the *locus in quo* was fast land in 1856, at the date of the conveyance from Leeds to McClees, it passed to him and the Leeds' heirs had nothing to convey in 1912; if it was under water in 1856, it did not pass to McClees, since his title by the very terms of the description stopped with the edge of the inlet. But it did not remain in Leeds; to so hold would be to hold that McClees might thereafter by the recession of the water be shut out by his own grantor from the boundary of the inlet

which his deed gave him. McClees had the ordinary right of a riparian owner to land by accretion. He had this right as compensation for his possibility of loss by erosion; but his right to accretion was inconsistent with a right remaining in Leeds to land that might reappear as the ocean receded. In the same way when McClees conveyed to the Atlantic City Beach Front Improvement Company in 1897, he bounded the land by the high-water mark of the ocean; there the title of his grantee ceased and the title of the state began; but he did not retain any right to land then under water, which might avail him thereafter when the ocean receded, to shut off his own grantee from the access to the shore which his deed gave. His grantee had the ordinary right of a riparian owner to the accretion. If the land was formerly fast land, and the title was lost by erosion, it became the property of the state, not merely as long as it remained under water, but, if the state made a riparian grant, absolutely. *Stevens* v. *Paterson and Newark Railroad Co., 34 N. J. Law 532.* Whatever right the former owners might have as against private persons upon the ocean receding, was of no avail against the state's riparian grant; the title lost by erosion was then lost forever, unless it was regained by accretion, and the right of accretion was the compensation of the former owner for his loss; each grantee had the same right. The case differs from *Ocean City Association* v. *Shriver.* That case turned upon the question whether the Ocean City Association was the riparian owner; their deed to Howell did not, like the deeds from Leeds to McClees and from McClees to the Atlantic City Beach Front Improvement Company, bound the property conveyed by the ocean.

We think the complainants fail to establish the title set up on the amended bill; the decree of dismissal must therefore be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, VREDENBURGH, WHITE—10.

*For reversal*—None.