LEHMAN H. GARRISON, executor of the last will and testament of Herbert Garrison, deceased, complainant,

*v.*

SAMUEL ENGLE, defendant.

[Decided August 4th, 1937.]

*Mr. David M. Bowen,* for the complainant.

*Mr. Frederick B. Edwards,* for the defendant.

SOOY, V. C.

This matter comes before me on the return of an order to show cause why the defendant should not be enjoined in accordance with the prayer of the bill of complaint.

The bill of complaint alleges that on June 16th, 1892, Lehman Garrison, now deceased, being the owner of the ripa abutting thereon, became seized of a certain riparian grant of land under the tide waters of Delaware bay, located at Fortescue, Cumberland county, New Jersey, and that on September 27th, 1918, Lehman Garrison conveyed to his son, Herbert Garrison, the southern portion of said riparian grant, being all the portion of said grant south of the two-hundred-foot passageway to the mouth of Fortescue creek, at Fortescue, New Jersey, aforesaid, which grant extended from Fortescue creek to the division line between property formerly owned by Benjamin F. Lee and property of Lehman Garrison, extending into the Delaware bay approximately one thousand two hundred feet from high water mark.

The bill further alleges that the estate of Herbert Garrison is still the owner of the riparian land aforesaid.

Defendant, in his answering affidavit, says: "It is true that during his lifetime, Lehman Garrison acquired" the riparian lands aforesaid under the grant of June 16th, 1892.

The bill further alleges that the defendant started to erect and is erecting on the riparian lands aforesaid a pier extending from the defendant's premises at the high water mark in the Delaware Bay and extending beyond and into the Delaware bay on the lands covered by said grant, and that the defendant is conducting a restaurant business on said pier and catering to fishing parties thereon, both of which businesses are in competition to a pier erected by Herbert Garrison during his lifetime and extending out into the Delaware bay over the riparian lands covered by the riparian grant aforesaid.

Complainant avers that immediately upon discovering the activities of the defendant in the erection of the pier aforesaid, he caused notice to be served on said defendant advising him of the riparian grant aforesaid and forbidding the defendant to proceed further in the erection of the pier which he is now occupying.

The defendant admits the receipt of two notices to discontinue his construction of the pier and the occupancy of the property beyond the high water mark and extending into the Delaware bay over the riparian grant which the complainant, as executor of his father's estate, claims title to.

The defendant justifies his refusal to heed the notices aforesaid to cease the construction of the pier aforesaid because "the said complainant has no rights in the lands in question which are in any way being violated because I am the sole owner of such lands."

Under a claim of title filed by the defendant, this court would ordinarily send the matter to the law court for a trial on the question of title, but as pointed out in *Naphas* v. *Naphas, 100 N. J. Eq. 534; 135 Atl. Rep. 874,* following *Hart* v. *Leonard, 42 N. J. Eq. 416, 419; 7 Atl. Rep. 865:*

"Where the legal right, though formally disputed, is yet clear, on facts which are not denied and legal rules which

are well settled," the court has a right and a duty to restrain the trespass of which complainant complains.

The affidavit of the defendant, filed and used on the return of the order to show cause, discloses that the defendant's contention is that Lehman Garrison, having acquired the lands described in the bill of complaint and covered by the riparian grant of June 16th, 1892, "to Benjamin F. Parker conveyed and released the portion of the lands under water which is the subject of this suit" and that "the said Benjamin F. Parker is a grantor of the lands and premises in question to myself, I having acquired the same from Elizabeth B. Mulford on April 28th, 1937, by general warranty deed. By virtue of said deed I am now the owner of the land bounding the high water mark and also of the lands under the water adjoining, the same having been sold by the said Lehman Garrison on July 21st, 1904, to one of my former grantors, Benjamin F. Parker."

On the return of the order to show cause, I asked to have marked in evidence certified copies of the original riparian grant, as well as the deed of July 21st, 1904, from Lehman Garrison to Benjamin F. Parker, and also the deed from Elizabeth B. Mulford to the defendant, under date of April 28th, 1927. These deeds are now before me and have been marked in evidence.

The deed from Lehman Garrison to Benjamin F. Parker contains the following description:

"Beginning at a point in highwater mark of Delaware Bay, being a corner of lot conveyed by Lehman Garrison to Jonathan B. Parker; thence (1) along said Parker's lot north sixty four degrees east one hundred feet to a ten foot alley; thence (2) along said alley north twenty-six degrees west thirty feet to a lot conveyed by Lehman Garrison to Clayton Parker; thence (3) along the lot of said Clayton Parker; south sixty four degrees west one hundred feet to highwater mark; thence (4) along highwater mark of said Bay south twenty six degrees east thirty feet to the beginning."

It will be observed that the premises above described is a lot starting at high water mark in the Delaware bay and extending east inland one hundred feet to a ten-foot alley.

The deed from Elizabeth B. Mulford to the defendant, by virtue of which the defendant claims "I am now the owner of the land bounding the high water mark and also of the lands under the water adjoining the same," contains the following description:

"Beginning at a point in high water mark of Delaware Bay, being a corner of lot conveyed by Lehman Garrison to Jonathan B. Parker; thence (1) along said Parker's lot north sixty four degrees east one hundred feet to a ten foot alley; thence (2) along said alley north twenty six degrees west thirty feet to a lot conveyed by Lehman Garrison to Clayton Parker; thence (3) along the lot of said Clayton Parker south sixty four degrees west one hundred feet to high water mark; thence (4) along high water mark of said bay south twenty six degrees east thirty feet to the beginning."

It will be observed that the two descriptions above set forth are identical and that the land conveyed started with the high water mark and was a strip one hundred feet by thirty feet and that it contained no reference to any lands other than those therein described and does not convey any of the lands formerly belonging to Lehman Garrison and located under water south of the high water line of the Delaware bay.

Just how it may be said that the defendant, through these deeds thus describing the lands conveyed, became the owner "of the lands under the water adjoining the same" does not appear and, of course, cannot be so under the law in this state.

But defendant says in his brief "that the high water mark at the time of the original conveyance was far beyond the point of the present high water mark and also beyond the point where the pier in question is constructed and the boundaries of the lands affected by this suit must be determined, as the determining feature is the high water mark at the time of the giving of the original deed." He cites *Nixon* v. *Walter, 41 N. J. Eq. 103; 3 Atl. Rep. 385.*

The permission from the state under which the defendant Engle constructed his pier was a permit "to construct an open pile timber pier 300 feet long and 10 feet wide, terminating in a 'T' 16 feet wide and 26 feet long, in the Delaware Bay,

at the foot of Remington Avenue in Downs Township, approximately 0.4 mile south of the mouth of Fortescue Creek, Cumberland County, New Jersey."

It is apparent that this pier is over three times as long as the premises described in the deeds under which the defendant claims title to the lands under the water.

The defendant argues that the high water mark is a fixed and permanent boundary and that the question therefore is "the line of high water at the date of the deed," and the defendant further says that the high water line "did not follow the changes of the high water mark" of Delaware bay.

Assuming, but by no means conceding, that the proposition as stated by the defendant and above quoted is true, it must follow that the lands and premises conveyed to the defendant in the deed from Elizabeth B. Mulford to himself are now completely submerged by water and that the high water line has receded, so that the pier three hundred feet long now has its beginning point "at the foot of Remington avenue."

A reading of *Nixon* v. *Walter, supra,* discloses that "in this case the six-rod strip was, when it was first conveyed, a definite parcel of land. It has been covered by the waters of the bay, so that that which was the high water or beach line when the original conveyance for the strip as a separate tract under which the answering defendant derives her title was given, is now at least six rods below the present high water or beach line. Such being the fact, she has no title under her deed to any part of the land covered by the complainant's deeds."

It is true that in non-navigable waters the case of *Nixon* v. *Walter, supra,* is controlling for the proposition that "where a boundary line was 'along the high water mark' of a pond, it was held that the line thus given was a fixed and permanent one, the line of high water at the date of the deed, and did not follow the changes of the high water mark of the pond."

But the law with reference to navigable waters is settled beyond dispute. In *Dewey Land Co.* v. *Stevens, 83 N. J. Eq.*

*314* (at *p. 317*) ; *90 Atl. Rep. 1040,* the court of errors and appeals, through Mr. Justice Swayze, said:

"If the land was formerly fast land, and the title was not lost by erosion, it became the property of the state, not merely as long as it remained under water, but, if the state made a riparian grant, absolutely. Whatever right the former owners might have as against private persons upon the ocean receding, was of no avail against the state's riparian grant; the title lost by erosion was then lost forever, unless it was regained by accretion, and the right of accretion was the compensation of the former owner for his loss; each grantee had the same right."

In *Camden and Atlantic Land Co.* v. *Lippincott, 45 N. J. Law 405* (at *p. 417*) the court, through Mr. Justice Depue, said:

"The principle on which these cases were decided is that in grants of lands lying along the seashore, the parties act with a knowledge of the variety of changes to which all parts of the shore are subject. The grantee takes no fixed freehold but one that shifts with the changes that gradually take place. The proprietor of lands having such a boundary is obliged to accept the alteration of his boundary by the gradual changes to which the shore is subject. He is subject to loss by the same means that may add to his territory; and as he is without remedy for his loss, so he is entitled to the gain which may arise from alluvial formations, and he will, in such case, hold by the same boundary, including the accumulated soil."

See, also, *Ocean City Association* v. *Shriver, 64 N. J. Law 550; 46 Atl. Rep. 690,* and many other cases, which I will not enumerate.

From the above, it is apparent that the defendant, on the record before me, as disclosed by the defendant's personal affidavit, is not the owner of the land and premises in question by virtue of the deed from Elizabeth B. Mulford to himself, dated April 28th, 1937, as it is likewise apparent that Elizabeth B. Mulford was not the owner of the lands in question, riparian lands, through the conveyance from Gar-

rison to Parker, dated July 21st, 1904, in both of which deeds the high water line confined the property conveyed, so that the grantees in either deed had no title to the riparian lands in question.

The above seemed apparent to the court on the return of the order to show cause, but defendant was permitted to file a brief in support of the legal principles raised by the affidavit filed by the defendant or by his counsel at that time, and no other defense was raised, either by counsel or by the defendant through his affidavit, other than the defenses above discussed.

On the coming in of the defendant's memorandum, he says that another defense is "that the State of New Jersey has granted to the defendant, Samuel Engle, certain rights to construct a pier upon the premises in question, which said rights are expressly reserved by the State of New Jersey in its deed to Lehman Garrison, bearing date June 16th, 1892."

The permit above referred to was issued by the board of commerce and navigation pursuant to chapter 123 of the 1914 laws of New Jersey.

In the third paragraph of the permit it is provided:

"The granting of this permit shall not be construed to in any way affect the title or ownership of property, and shall not make the Board or the State a party in any suit or question of ownership of property."

But the defendant contends that "the right to grant any subsequent license, power or authority affecting the lands in question were expressly reserved by the State of New Jersey in its conveyance to Lehman Garrison on June 16th, 1892, wherein it was stated, 'provided however, that nothing in this instrument contained shall prevent or in any way interfere with the full and ample right of the State to hereafter give license, power or authority effecting lands under water, whether in front of said lands or elsewhere in said State.'"

These reservations in the riparian grant may not be construed to diminish the thing granted, *i. e.*, the lands described in the deed, but properly construed, it provides that irrespec-

tive of the grant, license, power or authority effecting lands under water generally, whether in front of the lands described in the grant or elsewhere in the state, are not to be interfered with by the terms of the grant.

The phrase, "in front of said lands," did not refer to the lands described as having been conveyed by the state, but distinctly referred to the lands in front of those lands which have been so conveyed. The phrase "or elsewhere in said State" does not refer to the lands granted, but to other riparian lands that may be located elsewhere in the state, that is, at another place than the *locus* covered by the description in the grant or, as we find in *Corp. Jur.* (at *p. 402*), "somewhere or anywhere else."

In defendant's memorandum, filed as heretofore stated, he also contends that the defendant claims title "by reason of adverse possession." This is evidently an after-thought and is not supported by evidence contained in any affidavit heretofore filed, and the mere statement that he claims it was by adverse possession, without any affidavit to support it, will not suffice, particularly in view of the affidavit heretofore filed, in which the defendant claimed that his reliance was on the deeds aforesaid.

As pointed out by the complainant, the public has a right over and across the waters of the Delaware bay included within the lands granted by the riparian grant, and that right of the public over and across the waters of the bay exists concurrently with the title to the soil under water in the complainant and the exercise of the one will not extinguish the right of the other. *Hoboken Land and Improvement Co. v. Mayor, &c., of Hoboken, 36 N. J. Law 540.*

From the above it is quite apparent that the title of the complainant in the riparian lands is absolute, notwithstanding the fact that that title had been formerly disputed by the claim of title under the deeds heretofore referred to, which deeds, on inspection, clearly refute the claimed title, and it is very clear that on the facts in this case, which are not denied, and on legal principles, which are well settled, the defendant has no title and that he should be restrained from

a continuation of building on complainant's riparian lands and from occupying them by means of a wooden pier which he has constructed, in defiance of complainant's rights, and after due notice on the part of complainant that the defendant was proceeding at his peril.

The form of the restraint on this preliminary application will not go to the extent of a mandatory injunction that the pier be removed, but it will go to the extent that the defendant cease from operating and conducting a business or businesses on said pier as constructed beyond the line of high water and extending thence into the Delaware bay, and that the defendant be barred from the use of that portion of said pier for any purpose, including the tying up thereto of boats, no matter how propelled, *i. e.*, whether manually, by sail, by motor or by a combination of any of these means of propulsion.