24 N.J. Super. 376 (1953)
94 A.2d 530
H. CLINTON LEONARD AND MILDRED R. LEONARD, HIS WIFE, PLAINTIFFS,
v.
STATE HIGHWAY DEPARTMENT OF THE STATE OF NEW JERSEY, AND DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT, DIVISION OF PLANNING AND DEVELOPMENT OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 12, 1953.
*378 Mr. Frank Sahl and Mr. Daniel W. Beckley, attorneys for plaintiffs.
Mr. Theodore D. Parsons, Attorney-General of the State of New Jersey (Mr. Sackett M. Dickinson, Deputy Attorney-General, appearing), attorney for defendants.
HANEMAN, J.S.C.
Plaintiffs herein seek to set aside a riparian grant made to the State of New Jersey upon the application of Spencer Miller, Jr., State Highway Commissioner of the State of New Jersey, and a judgment declaring that they are vested with title to the disputed lands.
This matter was submitted upon the following stipulation of facts:
"1. The following plans or surveys are introduced into evidence:
(1) P-1, entitled: Survey of land of H.C. Leonard, et ux., dated April 1951, revised June, 1952, by William A. Conover and Associates.
(2) D-1, Map or Plan entitled: Map showing lands under tide waters situate partly in Borough of Paulsboro and partly in Township of West Deptford and East Greenwich, in the County of Gloucester, granted to State of New Jersey, State Highway Department, June 12, 1950, signed Peter Gannon, Chief, Navigation Section.
(3) D-2, Map or Plan entitled: New Jersey State Highway Department, Route 44, Section 14, original location plan for Mantua Creek, et cetera, dated in pencil October, 1944.
*379 2. The following facts may be taken as proven for the purposes of this litigation:
(a) Prior to July 1, 1891, there had been constructed along the easterly bank of Mantua Creek, adjacent to lands now owned by plaintiffs and by a predecessor in title of said plaintiffs, an embankment or dike (the beginning point and end of which for the purposes of this litigation are not necessary to be determined), which said embankment or dike excluded the tide waters from that portion of the land designated as T-85 on P-1 and delineated in pencil as Tract 1 on D-1. The said dike or embankment was then constructed in the following manner, i.e., of mud, dirt, stone and rocks.
At the time of the exclusion of the tide waters as aforesaid, the then high-water line was as delineated by a broken line east of the easterly bank of Mantua Creek, as shown on P-1 and as delineated in green and entitled: `Edge of Woods  original H.W.L.' on D-2.
The predecessor in title of said plaintiffs who so excluded the tide waters was the owner of the lands to the high-water line as shown on P-1 and D-1.
3. The plaintiffs herein have whatever title was obtained to T-85 by virtue of the construction of said embankment or dike and the exclusion of tide waters therefrom.
4. At the time of the riparian grant to the State of New Jersey, as delineated on D-1, the plaintiffs, or one of them, was the owner of the upland adjacent to said riparian grant to the mean high-water line. No notice was given them, or any of them, of the proposed application by the State Highway Department for the riparian grant, above referred to, to the State of New Jersey.
5. The mean high-water line as shown on D-1 is substantially the same high-water line which existed prior to the construction of the above referred to embankment or dike, which excluded tide waters from the lands in question."
Plaintiffs base their demand for relief, under the stipulated facts, upon three grounds: (1) the common law; (2) L. 1851, p. 335, hereinafter referred to as the Wharf Act and the repeal thereof, L. 1891, c. 124, p. 216, hereinafter referred to as the repealer, and (3) the failure of the State Highway Department to give the statutory notice to plaintiffs of a proposed application by it for a riparian grant of lands abutting the ripa which was then owned by plaintiffs.
It is undoubtedly true that under the common law of this State an owner had the right to make improvements upon, or reclaim the tide-flowed shore adjoining his lands, and the section so improved or reclaimed became vested in him in fee simple absolute. Gough v. Bell, 22 N.J.L. 441 *380 (Sup. Ct. 1850); Bell v. Gough, 23 N.J.L. 624 (E. & A. 1852).
Subsequent to the decision in Gough v. Bell, 22 N.J.L. 441, the Legislature regulated the acquisition of such tidal land by the passage of the Wharf Act which, as applicable hereto, was in effect a reaffirmation of the common law.
There is no proof before me as to the date when the dike or embankment herein was constructed and when the tide waters were thereby excluded from the lands in question between the high and low water mark, or as denominated in the act of 1851, the "shore," except that it was prior to 1891. I cannot find, therefore, whether this occurred before the passage of the Wharf Act.
It is, however, immaterial to determine the exact date, since the rights of a riparian owner, under the facts here present, were identical under either the common law or said act of 1851.
The Wharf Act made provision for the acquisition of two categories of land: (1) that land bounded by the high and low water marks, and (2) that land lying between the high water mark and a point beyond the low water mark. We are here concerned only with the former.
Sections 1 and 11 make particular provision for the lands so lying between the high and low water marks. Section 1 of said act, L. 1851, p. 335, provides as follows:
"1. Be it enacted by the Senate and General Assembly of the State of New Jersey, That it shall be lawful for the owner of lands, situate along or upon tide waters, to build docks or wharves upon the shore, in front of his lands, and in any other way to improve the same, and, when so built upon or improved, to appropriate the same to his own exclusive use."
Section 11 of said act provides as follows:
"1. And be it enacted, That the term shore, in this act, shall be construed to mean the land between the limits of ordinary high and low water; the term shore line, to mean the edge of the water at ordinary high water, and the term shore owner, to mean the owner of the lands above and adjoining the shore line."
*381 If plaintiffs are to succeed, it must be by virtue of either the common law or section 1 of the Wharf Act, above quoted, since they have not proven the obtainance of a license required by sections 2 to 10 of said act, nor do they claim title beyond the low water mark. By improving the shore, the shore owner acquired title thereto under section 1 of said act. Heiney v. Nolan, 75 N.J.L. 397 (Sup. Ct. 1907). The mere reclamation or improvement of land under section 1 of the said Wharf Act vested the title in such shore owner. It was not a requisite, as argued by defendant, that he must have constructed a dock or wharf or similar improvement. Stockton v. Lucol Co., 36 A. 572 (Ch. 1897).
In the light of the stipulation that a predecessor in title of the plaintiffs had reclaimed and improved the lands here involved, as required either by the common law or the Wharf Act, prior to 1891, I find that at the time of such improvement and reclamation such predecessors were vested with the fee to such lands.
In 1891 the Wharf Act was repealed by L. 1891, c. 124, p. 216. This act contains provisions excepting from its effect: (1) those who have theretofore obtained a direct legislative grant, or right, or license to reclaim or improve tidal lands, and (2) those who have obtained a license from the boards of freeholders as provided in L. 1851, p. 335, provided said license from said boards was exercised and the improvements completed within the time limited therein. There is absent any mention of title obtained under section 1 of the act of 1851 above cited.
The repealer neither detracts from nor adds to the title of the plaintiffs.
It follows, however, that having divested itself absolutely of title, the State cannot revest itself by such act. Dewey Land Co. v. Stevens, 83 N.J. Eq. 314 and 656 (E. & A. 1914); Ocean City Assn. v. Shriver, 64 N.J.L. 550 (E. & A. 1900); Harz v. Board of Commerce and Navigation, 126 N.J. Eq. 9 (Ch. 1939), affirmed 127 N.J. Eq. 341 (E. & A. 1940).
Erosion along tidal waters extends the domain of the State. Where there is a tide flooding or erosion by natural means, *382 as here, the riparian owner loses his title to the State. Seacoast, etc., Co. v. American Timber, 92 N.J. Eq. 219 (E. & A. 1920); Dewey Land Co. v. Stevens, 83 N.J. Eq. 314 (E. & A. 1914); Ocean City Assn. v. Shriver, 64 N.J.L. 550 (E. & A. 1900).
The natural tide flooding of the lands here in question, subsequent to the original exclusion of the tide and the said reclamation, vested title in those submerged lands in the State.
The statement referred to by plaintiffs, which might impart a theory contrary to the above, contained in Simpson v. Moorhead, 65 N.J. Eq. 623 (Ch. 1903), is dicta. The learned judge there said, prior to said statement:
"The question, which has been very interestingly argued here, touching the ownership of the reclaimed meadow lands lying subject to the flow of the tides, and the effect of subsequent submergence, &c., or any other question challenging the complainants' ownership and right of possession, cannot be raised here by the defendant under the peculiar circumstances of this case. The defendant himself is the grantor of those privileges and rights to the complainants which he now disputes. He cannot be heard to deny the effect of his own deed. It is inequitable that he should be permitted to do so."
In any event, the subsequent decisions of the Court of Errors and Appeals, in effect, reverse the cited dicta. See Seacoast, &c., Co. v. American Timber Co., 92 N.J. Eq. 219 (E. & A. 1920); Dewey Land Co. v. Stevens, 83 N.J. Eq. 314 (E. & A. 1914).
When the grant sub judice was made, the plaintiffs were the riparian proprietors and the defendants did not hold such a status.
At the time of said riparian grant, the State had the power and authority to release its interest in said lands to the proper parties and under a proper application, as provided by statute.
R.S. 12:3-7 provides as follows:
"If any person or persons, corporation or corporations, or associations, shall desire to obtain a grant for lands under water * * * the board shall, in the name of the state, and under the great seal of the state, grant the said lands in manner last aforesaid, and said conveyance shall be subscribed by the governor and attested by the attorney general and secretary of state, and shall be prepared under the direction of the attorney general, to whom the grantee shall pay *383 the expense of such preparation, and upon the delivery of such conveyance, the grantee may reclaim, improve, and appropriate to his and their own use, the lands contained and described in the said certificate; subject, however, to the regulations and provisions of sections 12:3-2 and 12:3-3 of this title, and such lands shall thereupon vest in said applicant; provided, that no grant or license shall be granted to any other than a riparian proprietor, until six calendar months after the riparian proprietors shall have been personally notified in writing by the applicant for such grant or license, and shall have neglected to apply for the grant or license, and neglected to pay, or secured to be paid, the price that the board shall have fixed."
Normally, a riparian owner has the preemptive right to a grant or lease of lands in front of his uplands as a property right. Shamberg v. Riparian Commissioners, 72 N.J.L. 132 (Sup. Ct. 1905); Shamberg v. New Jersey Shore Line R. Co., 73 N.J.L. 572 (E. & A. 1905).
Conceding that there is sufficient proof to justify a finding that the dike or embankment had, at some time prior to 1891, excluded the tide water from the lands claimed by plaintiffs, they were, at the time of the riparian grant to the State of New Jersey, again tide-flowed. It follows, for the reasons above stated, that plaintiffs were divested of title to so much thereof as was beyond the high water line, and the State of New Jersey was vested with title thereto. The State then had the power to make a riparian grant consistent with the statute.
The defendant cites R.S. 12:3-33 as authority for its failure to give the notice to plaintiffs apparently required by the next above cited statute. This section reads as follows:
"Whenever a public park, place, street or highway has been or shall hereafter be laid out or provided for, either by or on behalf of the state or any municipal or other subdivision thereof, along, over, including or fronting upon any of the lands of the state now or formerly under tidewater, or whenever a public park, place, street or highway shall extend to such lands, the board of commerce and navigation, upon application of the proper authority of the state, or the municipal or other subdivision thereof, may grant to such proper authority the lands of the state now or formerly under tidewater, within the limits of or in front of said public park, place, street or highway."
There are absent any direct adjudications on the right of the State to obtain such a title without the notice required *384 by R.S. 12:3-7 where it is not the riparian owner. The question seems to have been neither argued nor decided in Harz v. Board of Commerce and Navigation, 126 N.J. Eq. 9 (Ch. 1939).
I am disposed, however, to agree with the dicta in Empire Trust Co. v. Board of Commerce and Navigation, 124 N.J.L. 406 (Sup. Ct. 1940), where the court said:
"Apart from the question of whether these State agencies have in any material respect exceeded their granted powers, there would seem to be no doubt of the authority of the State itself to do what has been done here, unless, as intimated, some part of the upland has been taken for incidental highway purposes, and then the constitutional obligation to make compensation would arise. Stevens v. Paterson and Newark Railroad Co., 34 N.J.L. 532; Jersey City v. American Dock and Imp. Co., 54 Id. 215; Ross v. Mayor, &c., of Edgewater, 115 Id. 477; American Dock and Imp. Co. v. Trustees of Public Schools, 39 Id. 409; Bouquet v. Hackensack Water Co., 90 Id. 203; Woodcliff Land Imp. Co. v. New Jersey, &c., Railroad Co., 72 Id. 137; Seacoast, &c., Co. v. American Timber Co., 92 N.J. Eq. 219; Moore v. Ventnor Gardens, Inc., 105 Id. 730; affirmed, 109 Id. 132; Mayor, &c., of Hoboken v. Pennsylvania Railroad Co., 124 U.S. 656; 8 S.Ct. 643; 31 L.Ed. 543. But there is no occasion to consider and determine the question."
The facts in that case were peculiarly parallel to these sub judice. The State Highway Commission there, as here, was not a riparian proprietor of the lands adjacent to those for which an application for a riparian grant had been made. It had, however, "laid out or provided" for a highway along or extending to the tide lands. No notice of the proposed application was given to the riparian owner.
There seems no logical reason which would bar the State from, in effect, retaining title in itself to land under water for some of its needed public purposes. The riparian proprietor has a preemptive right to such a grant as against any individual but not as against the State itself. The right of such riparian proprietor is subject to the prior right of the State to use such lands for its own purposes. It cannot be forced to convey such lands to an individual as may be required by one of its agencies for its own needs.
Judgment will be entered for defendant and the complaint will be dismissed.