29 N.J. Super. 188 (1954)
102 A.2d 97
H. CLINTON LEONARD AND MILDRED R. LEONARD, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
STATE HIGHWAY DEPARTMENT OF THE STATE OF NEW JERSEY, AND DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT, DIVISION OF PLANNING AND DEVELOPMENT OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1953.
Decided January 5, 1954.
*190 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Frank Sahl argued the cause for plaintiffs-appellants (Mr. Sahl and Mr. Daniel W. Beckley, attorneys).
Mr. Sackett M. Dickinson, Deputy Attorney-General, argued the cause for defendants-respondents (Mr. Theodore D. Parsons, Attorney-General, attorney).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiffs appeal from a judgment of the Chancery Division dismissing their amended complaint in which they demanded judgment (1) setting aside a certain riparian grant from the Division of Navigation, Department of Conservation and Economic Development, to the State of New Jersey; (2) establishing that plaintiffs are the owners of the lands covered by the riparian grant; and (3) requiring and commanding defendants to institute condemnation proceedings to condemn said lands, already taken by the State for highway purposes, so that they might be compensated for the value thereof.
The action was originally instituted in the Law Division, with the State Highway Department as sole defendant. The court on its own motion transferred the action to the Chancery Division for final determination on the ground that complete and effective relief could be obtained there. The complaint was then amended, adding the Department of Conservation and Economic Development, Division of Planning *191 and Development, as a defendant. The State Highway Department answered, setting up as separate defenses that (1) the State Highway Commissioner had the legal right to enter upon and take possession of the lands for highway purposes in advance of making payment therefor; (2) the complaint failed to state a claim upon which relief could be granted because title to the lands were vested in the State; and (3) the riparian grant gave the State title for the use of the State Highway Department. The cause was submitted upon an agreed stipulation as to the facts and legal questions involved.
Sometime prior to July 1891 plaintiffs' predecessor in title constructed an embankment or dike along the easterly bank of Great Mantua Creek, adjacent to the lands now owned by plaintiffs which are located in West Deptford Township, Gloucester County, New Jersey. This embankment excluded the tidewaters of the creek from the lands in question. The present mean high water line is substantially the same as that which existed prior to the construction of the embankment. At the oral argument it was stated that plaintiffs acquired title to their present lands in 1939. It was admitted that at that time, and since, the lands here in controversy were flooded by the flow of the tide through breaches in the embankment.
On March 1, 1950 the then State Highway Commissioner applied to the Department of Conservation and Economic Development for a riparian grant covering the lands in question in connection with the construction of State Highway Route 44. The riparian grant was made on June 12, 1950, without notice to plaintiffs, the riparian owners. The State Highway Department entered upon the premises January 2, 1951 and has proceeded with the building of the highway, which operation involved, among other things, the cutting, digging out and removal of the banks on the edge of Great Mantua Creek, which banks are claimed to be the property of plaintiffs.
As stated in the stipulation filed in the Chancery Division, plaintiffs based their claim for relief upon the common law, *192 the Wharf Act of 1851 (L. 1851, p. 335), the repeal of that act by L. 1891, c. 124, and the failure of the State Highway Department to give them statutory notice of its application for a riparian grant. The State conceded that plaintiffs' predecessor in title who built the embankment or dike prior to 1891 thereby became vested with a fee in the lands which are the subject of this action, and this by virtue of the common law of the State or under the provisions of the Wharf Act of 1851.
Gough v. Bell, 22 N.J.L. 441 (Sup. Ct. 1850), affirmed sub nom. Bell v. Gough, 23 N.J.L. 624 (E. & A. 1852), determined that in the absence of legislative restriction and where no nuisance was created, a riparian proprietor might appropriate the tide-flowed shore adjoining his land, between high and low water, to his own use. Chief Justice Green stated (at page 470) that "The custom of making such appropriation, long enjoyed and universally acquiesced in, constitutes a local common law, which this court will recognize, and which it would be alike unsafe and unwise to disregard." On appeal, Justice Elmer spoke of the usage as having been "sanctioned by the courts and by repeated legislative enactments too unequivocal to admit of dispute and too plain to be disregarded." 23 N.J.L., at page 668. The Wharf Act of 1851, section 1, adopted after the Supreme Court decision in Gough v. Bell, reaffirmed the local common law. Accordingly, plaintiffs' predecessor in title who reclaimed or improved the lands here involved became vested with a fee therein. It is admitted that L. 1891, c. 124 repealing the Wharf Act did not detract from nor add to the title so acquired.
Did the riparian owner lose his title to the State when the lands again became tide-run because the creek had worked its way through the dirt and stone dike? The Chancery Division judge held that plaintiffs or their predecessors were divested of title to so much of the land as lay beyond the high water line, and the State became vested with title thereto, by reason of the lands again becoming tide-flowed.
Before disposing of this question we should comment *193 upon plaintiffs' contention that our determination must be governed by the law relating to meadow banks. In the first place, this action was instituted and pursued on the theory that plaintiffs' rights arose from the local common law and the Wharf Act of 1851. Secondly, a careful study of the meadow bank law, both statutory and decisional, shows that it has no application to the problem at hand. We have examined the original act of November 29, 1788 (Paterson's Laws, p. 84), relating to the improvement of tide swamps and marshes, as well as the very extensive body of legislation which followed thereon, and determine that these laws are not pertinent. See also Pennington's Laws of New Jersey, 1703-1820, p. 82; Revision of 1877, pp. 642 et seq.; Hood's Index of Colonial and State Laws of New Jersey, 1663-1903, pp. 683 et seq., where some 250 laws may be found relating to meadow lands in particular areas of the State and to a number of meadow, marsh and draining companies; and R.S. 15:5-8 and 40:57-10. Cf. Gough v. Bell, 22 N.J. Law 441, 466 (Sup. Ct. 1850).
We agree with the court below that the natural tide-flooding of the lands here in question, subsequent to the original exclusion of the tide by the construction of an embankment, vested title in the submerged lands in the State. Where, as here, there is erosion by natural means and a flooding by tides of the creek, the riparian owner loses his title to the State. Seacoast Real Estate Co. v. American Timber Co., 92 N.J. Eq. 219 (E. & A. 1920); Dewey Land Co. v. Stevens, 83 N.J. Eq. 314 (E. & A. 1914).
Plaintiffs argue that "the theory that mere submergence takes away private title is quite too uncertain to be made the means of changing the ownership of lands. Does the first overflow divest the owner of his title? If not, how many are required to pass a good title to the State?" The argument is taken verbatim from Simpson v. Moorhead, 65 N.J. Eq. 623, 630 (Ch. 1904). That was an oral decision by Vice-Chancellor Grey and dealt, essentially, with the law relating to meadow banks. What he had to say about submergence was dictum, as is demonstrated by his statement that:
*194 "The question which has been very interestingly argued here, touching the ownership of the reclaimed meadow lands lying subject to the flow of the tides, and the effect of subsequent submergence, &c., or any other question challenging the complainants' ownership and right of possession, cannot be raised here by the defendant, under the peculiar circumstances of this case. The defendant himself is the grantor of those privileges and rights to the complainants which he now disputes. He cannot be heard to deny the effect of his own deed. It is inequitable that he should be permitted to do so."
Simpson v. Moorhead refers to the case of Ocean City Ass'n. v. Shriver, 64 N.J.L. 550 (E. & A. 1900), which plaintiffs claim is applicable to the present situation. The facts of that case are altogether different. Chief Justice Depue there referred to Sir Matthew Hale's De Jure Maris (Hargraves' Law Tracts, 15, 16, 17) where it was said:
"If a subject hath land adjoining the sea, and the violence of the sea swallow it up, but so that yet there be reasonable marks to continue the notice of it, or though the marks be defaced, yet if by situation and extent of quantity and bounding upon the firm land, the same can be known, though the sea leave this land again or it be by art or industry regained, the subject doth not lose his propriety. * * * But suppose the inundation of the sea deface the marks and boundaries, yet if the certain extent or contents from the land not overflown can be evidenced, though the bounds be defaced, yet it shall be returned to the owner according to those quantities and extents that it formerly had. * * *" (64 N.J. Law, at page 556; italics ours)
This states the principle of avulsion and relates to the sudden removal of land from the estate of one man to that of another, as by a sudden change in the course of a river, or by hurricane action, or by other violent natural forces. Avulsion is to be contrasted with erosion which involves a gradual eating away of the soil by the operation of currents or tides. Examples of avulsion may be found in Mulry v. Norton, 100 N.Y. 424, 3 N.E. 581 (Ct. App. 1885), cited in the Ocean City Ass'n. case; City of Chicago v. Ward, 169 Ill. 392, 48 N.E. 927, 38 L.R.A. 849 (Sup. Ct. 1897); State of Arkansas v. State of Tennessee, 246 U.S. 158, 38 S.Ct. 301, 62 L.Ed. 638 (1918); Baumhart v. McClure, 21 Ohio App. *195 491, 153 N.E. 211 (Ct. App. 1926), and United States v. Property on Pinto Island, 74 F. Supp. 92 (D.C.S.D. Ala. 1947).
Plaintiffs have also referred us to an opinion of Judge Woods sitting in the Law Division in the case of State v. Funk and which we do not cite because it is unreported. We have examined that case and find that it deals with meadow bank law and has no application here.
Having determined that title to the submerged lands became vested in the State, the question remains whether the State Highway Department should have given statutory notice to plaintiffs, as the riparian owners, of its application for a riparian grant. The applicable statute, R.S. 12:3-7, provides that:
"If any person or persons, corporation or corporations, or associations, shall desire to obtain a grant for lands under water * * * the board shall, in the name of the state, and under the great seal of the state, grant the said lands in manner last aforesaid, and said conveyance shall be subscribed by the governor and attested by the attorney general and secretary of state, * * * and upon the delivery of such conveyance, the grantee may reclaim, improve, and appropriate to his and their own use, the lands contained and described in the said certificate; subject, however, to the regulations and provisions of sections 12:3-2 and 12:3-3 of this title, and such lands shall thereupon vest in said applicant; provided, that no grant or license shall be granted to any other than a riparian proprietor, until six calendar months after the riparian proprietors shall have been personally notified in writing by the applicant for such grant or license, and shall have neglected to apply for the grant or license, and neglected to pay, or secured to be paid, the price that the board shall have fixed; * * *."
The State of New Jersey, as stated, was vested with title to the tide-flowed lands at the time of the application for the riparian grant and when the grant itself was made on June 12, 1950. Normally, a riparian owner has the preemptive right to a grant or lease of lands in front of his uplands, as a property right. Shamberg v. Board of Riparian Commissioners, 72 N.J.L. 132 (Sup. Ct. 1905). We agree with the conclusion reached by the Chancery Division that the State Highway Commissioner, as applicant, did not have *196 to notify plaintiffs, as riparian proprietors, of his application for a riparian grant.
In addition to the reasons given by the court below, 24 N.J. Super. 376, 383-384 (Ch. Div. 1953), there is the added reason that R.S. 12:3-7 does not, in our view, require the State or the State Highway Commissioner, its agent, to give notice to the riparian owner of an application for a riparian grant. That statute is applicable only to "any person or persons, corporation or corporations, or associations." The proviso refers to "any other than a riparian proprietor," and the words "any other" reasonably have reference only to any other "person or persons, corporation or corporations, or associations" at the beginning of the section. N.J.S.A. 1:1-2 defines "person," when used in the Revised Statutes, as including "corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals," adding that when the word is "used to designate the owner of property which may be the subject of an offense, [it] includes this State * * *." The words "municipality" and "State" are separately defined in the same section. Accordingly, we conclude that the State and the State Highway Commissioner are not included within the meaning of the word "person" or "corporation" in R.S. 12:3-7.
It may also be noted that R.S. 12:3-33, quoted in the opinion below, does not require notice to the riparian owner where a proper authority of the State makes application for a riparian grant for highway purposes, as here. That statute has its source in L. 1916, c. 98, adopted long after the statute from which R.S. 12:3-7 derives.
The judgment below is affirmed.