**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3926-16T3

VINCENT PERRI,

 Plaintiff-Respondent,

v.

STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,
DIVISION OF LAND USE REGULATION,
BUREAU OF TIDELANDS MANAGEMENT
and ASSISTANT COMMISSIONER
VIRGINIA KOPKASH,

 Defendants-Appellants.

_____

Argued September 17, 2018 – Decided November 28, 2018

Before Judges Messano, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000112-16.

Nicolas G. Seminoff, Deputy Attorney General, argued the cause for appellants (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Nicolas G. Seminoff, on the briefs).

John F. Chiaia argued the cause for respondent.

Edward C. Eastman argued the cause for amicus curiae New Jersey Land Title Association (Davison, Eastman, Muñoz, Lederman & Paone, PA, attorneys; Michael J. Fasano, on the brief).

PER CURIAM

Peninsula Corporation (Peninsula) owned land above the mean high-water mark on Barnegat Bay in the Curtis Point section of Brick Township. In 1969, Peninsula purchased adjacent underwater property from the State of New Jersey in contemplation of installing bulkheads, backfilling the land, and constructing a residential development, which it did. Attached to the 1969 grant from the State to Peninsula (the grant), and incorporated by reference, was a map that generally sketched the line of Peninsula's existing property above the mean high-water mark, and denoted two lines, the Bulkhead Line and the Pierhead Line (collectively, the Lines), with metes and bounds descriptions for both. It is undisputed that the State conveyed all underwater lands to the Bulkhead Line to Peninsula. The Pierhead Line lay further offshore of the Bulkhead Line in the waters of the Bay.

2

In 1984, plaintiff Vincent Perri purchased a single-family waterfront home in the development.[1] Plaintiff's predecessor in title had purchased the property from Peninsula in 1973, and the deed to Perri conveyed two separate lots: Lot 61, with a waterside property line that was the Bulkhead Line; and Lot 61.01, which was the underwater property between the Lines. In 1994, plaintiff applied for and was granted permission from DEP to construct "[seventy-five] linear feet of replacement bulkhead, [eighteen] inches waterward of the existing deteriorated bulkhead, legalize [the] existing . . . dock, and c[o]nstruct a [four-foot] wide . . . dock parallel to the bulkhead . . . ." The permit included an administrative condition that plaintiff "receive a Tidelands grant, lease or license . . . ." Accompanying the application for the permit and license was a survey map, showing the lot lines and the anticipated improvements to be constructed between the Lines. Plaintiff renewed the license in 1999.

Plaintiff failed to renew the license when it expired in 2006. In 2009, DEP notified plaintiff that he needed to file a renewal application, which plaintiff

---

[1] Plaintiff purchased the property with his wife, and the New Jersey Department of Environmental Protection (DEP) issued the subsequent applications and permits we reference in the opinion in the names of plaintiff and his wife. However, plaintiff filed the complaint initiating the litigation that resulted in the judgment under review in his name alone, and the order we review lists only plaintiff. We therefore refer to plaintiff in the singular throughout this opinion.

A-3926-16T3

completed and submitted to DEP. In 2010, DEP approved the license, subject to plaintiff's payment of past due charges and per annum charges going forward. Plaintiff failed to pay the charges and no license issued.

In 2013, DEP issued a notice of lien on plaintiff's property for delinquent lease payments. In response, plaintiff successfully applied to the Tidelands Resource Council (TRC) for a statement of no interest (SNI), essentially arguing that he owned the underwater property between the Lines and therefore was not required to pay for a license. On March 18, 2016, DEP's Assistant Commissioner, Virginia Kopkash, vetoed the TRC's minutes approving the SNI. Kopkash stated, "The State retain[ed] certain property interests in portions of the [property] that it may not relinquish without receiving compensation . . . ."

In response, plaintiff filed a pro se complaint seeking to invalidate Kopkash's veto. He later amended his complaint to add a quiet title claim. DEP answered, and both sides moved for summary judgment.

After considering oral argument, on January 20, 2017, in a comprehensive oral opinion, the motion judge granted summary judgment to plaintiff on both counts of the complaint. DEP filed a timely motion for reconsideration, which the judge denied. This appeal followed.

A-3926-16T3

The question before us is straightforward.  By the terms of the grant, did DEP convey fee simple title to the underwater property between the Lines, as plaintiff argues and as the judge agreed?  Alternatively, did DEP retain fee simple title to that property, thereby retaining the right to license plaintiff's use of any portion of the property?[2]  Amicus New Jersey Land Title Association (NJLTA) agrees with the motion judge's interpretation of the grant.  Moreover, it asserts that title insurers throughout New Jersey, relying on recordation statutes and common practice, would insure title based upon the recorded document, i.e., the grant, and might otherwise be unaware of the agency's claim to the property between the Lines, simply because DEP issued a license.

We review a grant of summary judgment by applying the "same standard as the motion judge."  Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).  Summary judgment will be granted if "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  "[T]he appellate court should first decide whether there was a genuine issue of material fact, and if none exists, then decide whether the trial court's

---

[2]  It is undisputed that DEP retains the right to require plaintiff to seek its approval and obtain appropriate permits before any construction in, on or above the underwater lands between the Lines.

ruling on the law was correct." Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (citing Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998)). "The trial court's conclusions of law and application of the law to the facts warrant no deference from a reviewing court." W.J.A. v. D.A., 210 N.J. 229, 238 (2012) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We agree there are no factual disputes, and the issue on appeal presents solely a question of law. See, e.g., Stransky v. Monmouth Council of Girl Scouts, Inc., 393 N.J. Super. 599, 608 (App. Div. 2007) (citing Hofer v. Carino, 4 N.J. 244, 250 (1950) ("The construction of a deed is a question of law.")). We begin by reviewing some general principles.

"The State owns in fee simple all lands that are flowed by the tide up to the high-water line or mark." Panetta v. Equity One Inc., 190 N.J. 307, 318 (2007) (quoting O'Neill v. State Highway Dep't., 50 N.J. 307, 323 (1967)). "A riparian grant . . . is the method by which the State conveys riparian lands to its citizens." Ibid.

> [T]he title and interest of the state in these shore lands [is] a distinct and separate estate, to be dealt with and disposed of in accordance with the terms of the statutes; first, by a sale and conveyance to the riparian owner himself, . . . .

. . . .

> [T]he title under the New Jersey grants is not only of a new estate, but in a new subject divided from the upland or riparian property by a fixed and permanent boundary. . . . [Such grants are] of the estate in the land, and not of a mere franchise or incorporeal hereditament. . . . [U]nder these grants the land conveyed is held by the grantees on the same terms on which all other lands are held by private persons under absolute titles, and every previous right of the State of New Jersey therein, whether proprietary or sovereign, is transferred or extinguished, except such sovereign right as the State may lawfully exercise over all other private property.
>
> [Id. at 319 (alterations in original) (quoting Hoboken v. Pa. R.R. Co., 124 U.S. 656, 690-91 (1888)).]

"In short, a riparian grant is the conveyance of real property divided from the uplands by a fixed boundary, no different from any other conveyance of land." Ibid. As a result, "where the State grants or 'leases' riparian lands by an instrument using [appropriate] language . . . a fee is conveyed, the grantee becomes the owner of said lands, and no title remains in the State." Island Heights v. Presbyterian Camps & Confs. Inc., 68 N.J. Super. 291, 295 (App. Div. 1961).

The grant conveyed to Peninsula,

> ALL that tract of land flowed by tidewaters situate in the Township of Brick . . . , fronting on and abutting lands acquired by [Peninsula] by deed dated March 13,

7

1958 . . . and extending to the Pierhead Line herein established, in . . . Barnegat Bay the several courses and distances of the lands intended to be granted herein as shown within the dash lines on the map attached and made part hereof.

[(Emphasis added).]

These words were typed in a space provided on a printed legal form, with very little else being typed on the form.[3]  Notably, the Pierhead Line appears on the attached map as a dash line; the Bulkhead Line is a solid line.

Judge Skillman explained the basic tenets an appellate court should apply in construing a deed.

> [T]he court must undertake to determine the intention of the parties.  If that intention is not clear on the face of the deed, the court may consider extrinsic evidence to resolve any ambiguity.  However, in the absence of extrinsic evidence, the court must determine a dispute concerning title by construing the deed as a whole, without giving disproportionate emphasis to any individual part of the document.

---

[3]  Citing Riverton Country Club v. Thomas, 141 N.J. Eq. 435, 445 (Ch. Div.), aff'd o.b., 1 N.J. 508 (1948), NJLTA asserts that "specially worded and inserted" language included in a "common type . . . printed [legal] form . . . must be taken to express the intent of the parties over mere formal or printed matter."  DEP counters by citing Housing Authority of Atlantic City v. State, 188 N.J. Super. 145 (Ch. Div. 1983), which is not directly responsive.  In that case, the court only recognized the "established principle" that ambiguities in a grant "must be strictly construed in favor of the State."  Id. at 152 (citing Polhemus v. Bateman, 60 N.J.L. 163, 166 (E. & A. 1897)).  We certainly recognize and agree with that proposition, but the conveying language in this grant is unambiguous.

[Boylan v. Boro. of Point Pleasant Beach, 410 N.J. Super. 564, 569 (App. Div. 2009) (citations omitted).]

Here, the granting provisions of the instrument are unambiguous.  The State conveyed all the property fronting and abutting Peninsula's land, not only to the solid Bulkhead line, but also to the dashed Pierhead line.  DEP's argument that the grant unambiguously reserved the State's title to the land between the Lines is without merit.  R. 2:11-3(e)(1)(E).

We also reject DEP's arguments that construing the grant in this fashion ignores the permitting provision, or that the judge placed too much emphasis on this provision, thereby misconstruing the actual terms of the conveyance.  The permitting provision, located in the second full paragraph of page two of the grant, prohibited Peninsula and its successors to "exclude the tidewaters" from the conveyed lands, or "fill in, erect a pier . . . or otherwise improve or develop . . . [or] appropriate the . . . lands under water to its own exclusive use" without a permit from DEP.  The agency argues this provision demonstrates that it retained title to the property between the Lines, and it asserts a contrary construction permits plaintiff to place fill between the Lines as he pleases.[4]

---

[4]  In its brief and reply brief, DEP repeatedly asserts without citation that plaintiff claims the right to "fill beyond the bulkhead line."  The record does not reveal any such claim.

A-3926-16T3

As the motion judge specifically noted, this provision only requires plaintiff to obtain a permit whenever he seeks to take action, but it does not authorize DEP to charge a license for the use of the property between the Lines. He noted, and we agree, that, "[t]here is no language in the grant that reserves for the State the right to charge license fees to the owner for future development[s]." It suffices to say that the terms in the permitting provision are not contrary to the express terms of the grant we already referenced. Furthermore, it is undisputed that DEP can regulate plaintiff's use of the property between the Lines through its permitting processes.

Alternatively, DEP urges us to consider other language in the grant that it contends demonstrates the parties intended a conveyance of the riparian land waterward to the Bulkhead Line only and no further. For example, in paragraph two on page three of the grant (paragraph two), DEP reserved the right to "change the exterior lines for solid filling and for piers, and fix the same further from the shore . . . , even though such action may affect the lands hereby granted, whenever the State may deem it necessary in the interest of navigation . . . [.]" If "such exterior lines [were] placed out farther from the shore . . . , then" subject to some limitation, Peninsula and its successors would, upon payment, have "the exclusive right to apply for and receive a lease or grant of the additional land

under water lying between the present exterior lines . . . and the new exterior line or lines that may . . . be fixed . . . [.]"

DEP contends this reservation of rights in paragraph two, specifically, the ability to charge for additional "under water [land] lying between the present exterior lines," demonstrates DEP never conveyed the property between the Lines to Peninsula. If it had, this language would be unnecessary, because Peninsula already had title to the property.

DEP cites another provision, paragraph three on page three (paragraph three), which reserved its right to "grant or lease any of the lands . . . lying in front of the exterior line for solid filling or piers . . . referred to herein, . . . for any . . . purpose; provided that such grant or lease shall not operate to interfere with the reasonable use of and access by water to the lands under water hereby granted . . . ." (Emphasis added). DEP contends that if the grant conveyed the property between the Lines to Peninsula, paragraph three would permit the agency to convey portions of the same land to someone else, as long as it did not interfere with Peninsula's water access to its upland property.

By its own terms, paragraph two limits DEP's authority to "change the exterior lines," i.e., the Bulkhead Line, the Pierhead Line or both, only when "necessary in the interest of navigation." If DEP extended only the Pierhead

11

Line further into the Bay, plaintiff would not automatically have title to the additional underwater land. Rather, paragraph two requires him to lease or purchase any additional land from DEP. Such a scenario is entirely consistent with the grant's conveyance of the land between the Lines to plaintiff in the first instance. Moreover, as amicus NJLTA notes, paragraph two, which is pre-printed on the form of the grant, may be read merely as recognition of a riparian proprietor's "preemptive right" to a grant or lease of lands in front of his or her upland property. See N.J.S.A. 12:3-7; Leonard v. State Highway Dep't, 24 N.J. Super. 376, 383 (Ch. Div. 1953), aff'd., 29 N.J. Super. 188 (App. Div. 1954).

Paragraph three, which is also pre-printed on the form of the grant, allows the State to convey or lease underwater lands "in front of the exterior line for solid filling or piers[,]" but not so as "to interfere with the reasonable use of and access by water to the lands under water hereby granted." (Emphasis added). By its terms, paragraph three prohibits the State from conveying or leasing underwater lands, including those outside the Pierhead Line, to others if it interferes with plaintiff's use of and access to his land. This paragraph, therefore, may be construed consistently with the grant of fee simple title to plaintiff of the underwater lands between the Lines. Moreover,

> Conceding that the grant may vest in the grantee of
> lands under water all the rights of the state in the lands

12

granted, and thereby exclude the public rights which previously existed, it seems equally clear that the conveyance need not necessarily be so comprehensive. The state, as well as the individual, may limit the extent of its grant. The language of the conveyance must measure what passes by it, and the grantee can acquire nothing in excess of that because of the existence of a power to enlarge the grant.

[Polhemus, 60 N.J.L. at 166.]

In short, the pre-printed form provisions of the grant include language that supports two or more reasonable interpretations. However, the express terms of the grant are clear and unambiguous. Any ambiguity may be construed consistently with the specific, idiosyncratic terms of the grant, which are typed on the form and explicitly reference a unique map, particularly drawn to convey by metes and bounds description certain property to Peninsula.

To the extent we have not specifically addressed DEP's other arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13